## SIMMONS v. CABANNE et al., Appellants.

### In Banc, November 3, 1903.

1. **Wills:** DOUBLE LIMITATIONS: FEE UPON A FEE. A fee can not be limited upon a fee, nor can the entire fee be limited to two different persons or sets of persons at the same time, each to the exclusion of the other.

2. ———: EQUITABLE ESTATE. Equitable estates are subject to the same incidents, properties and consequences as belong to similar estates at law.

3. ———: CONTINGENCIES WHICH DO NOT ARISE. The provisions of a will authorizing the trustee to disinherit certain sons in the event that they become drunkards, gamblers or spendthrifts are of no importance in determining the estate taken by such sons, if none of them became drunkards, gamblers or spendthrifts and none of them were in fact disinherited. So likewise would be an unexecuted power to sell.

Simmons v. Cabanne.

4. ————: "MY PROPERTY." The expressions in a will referring to the property devised as "my property" are referable to the property at the time the will was written, and not to the date it took effect, and are, therefore, valueless in determining what estate passed to any one under the will.

5. ————: EQUITABLE ESTATE: FEE BY IMPLICATION. A testator by his will gave certain lands to his brothers as trustees, to "take charge of, manage and control so as to derive therefrom the largest income which is consistent with the safety of the capital," and "apply the income to the education and support" of his three minor sons "in equal proportions," and "if any of my children die before arriving at the age of twenty-one years, and without issue, the share of such child shall go in equal proportions to my surviving children . . . and in case of the death of all of my children without issue within the age of twenty-one years, my will and desire is that my estate shall vest in my brothers." He gave the trustees power to sell the real estate, and directed them not "to give to my said children or either of them his share or shares of my estate to manage for himself or themselves until he or they shall be fully capable of exercising a safe, prudent management thereof." All the children reached their majority, and one of them died without issue, by his will leaving his estate to his two brothers. *Held*, that the will did not give the sons simply an equitable life estate, with the fee limited to their heirs by necessary implication, but gave an equitable fee-simple estate to the three sons, the legal title being in the trustees for the particular purposes named in the will. *And* when the trustees and the surviving sons joined in a deed in a friendly partition of the lands, the legal and equitable title united in the respective grantees.

6. ————: ————: WORDS OF INHERITANCE. Where the equitable fee-simple title, to afterwards ripen, upon certain conditions, into a full legal and absolute fee-simple title, is created by the will in certain devisees, there is no necessity for the will to contain words of inheritance.

7. ————: LIMITATION BY IMPLICATION. Where the intention of the will is to create a fee-simple estate in the devisees, there can be no limitation by necessary implication to the devisees' children.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher*, Judge.

AFFIRMED.

Vol 177 mo—22

*B. P. Waggener, H. Chouteau Dyer, Frank Doster and B. R. Vineyard* for appellants.

(1) While a general devise to one without specification of the interest devised, followed by an absolute power of disposal, without words indicating a contrary intent, will vest in the devisees a title in fee simple, yet where the devise is to one for life with a power of disposition, the power does not enlarge the life estate to one in fee simple. Bramell v. Adams, 146 Mo. 81; McMillan v. Farrow, 141 Mo. 63; Evans v. Folks, 135 Mo. 403. (2) Nor need the gift be made in terms for life, in order to come within the meaning of this rule. The limitation need not necessarily be expressed in the words "for life," but may be accomplished by the use of any equivalent word, or words having a like import. Walton v. Drumtra, 152 Mo. 507; Cross v. Hoch, 149 Mo. 343; Schiffman v. Schmidt, 154 Mo. 204; Speed v. Railroad, 163 Mo. 125. In the Cabanne will the gift of the income was only for the "support and education" of the sons. This could not continue longer than their lives. The very fact that there is no gift of the income beyond the lives of the sons, limits the gift to them for life. Davis v. Williams, 85 Tenn. 646, s. c., 4 S. W. 8. (3) And where, as in the Cabanne will, the devise is to trustees to apply the income for the benefit of the testator's children, *without impairing the capital or body of the devise,* it necessarily implies that they are limited in their enjoyment of it to a life estate. Lampert v. Haydel, 96 Mo. 439; Lewis v. Pitman, 101 Mo. 291; Jarboe v. Hey, 122 Mo. 341. And even though a gift of the income of real estate for life may be a gift of the property itself for life, as indeed the authorities seem clearly to establish, or when, as here, the legal title is vested in trustees, it may operate as the gift of an equitable life estate, such giving of income for life cannot be construed into giving of a title in fee, but one for life only. Davis v. Williams, supra; Blanchard v.

Blanchard, 1 Allen 225; Blanchard v. Brooks, 12 Pick. 63; McClure v. Melendy, 44 N. H. 469; Thompson v. Schneck, 16 Ind. 194; Hopkins v. Keazer, 89 Me. 347; s. c., 36 Atl. 615. In the case of Cross v. Hoch, 149 Mo. 325, it was expressly held that the devise of property to a trustee for the "use" of the testator's daughter, conferred upon her merely a life estate, with the right "to enjoy the rents, issues and profits, but not to own it so as to sell it;" and the remainder was held to belong under the will to her children. (4) The expression "my estate" used by the testator in the disinheritance clause of his will and the expression "my property," used by him in the clause in reference to the sale and disposition of a part of his estate clearly indicate that the testator did not understand he had parted in the gift for his sons with his entire interest in the "property" and "estate" to which he referred. And the authority and direction given to the trustees about emancipating certain of the testator's slaves point to the same conclusion, as does also the gift of $2,000 to erect a monument to the memory of his father and mother. McMillan v. Farrow, supra. (5) Where a power of sale and disposition, as in the Cabanne will, is conferred on the trustees as to a part of the property, the title to which is vested in them, they, of course, may exercise that power. But where they are given no such power as to the other part but are limited to a collection and disbursement of the "income" therefrom, the trustees can in no wise encroach upon the *corpus* of that part, over which their power is thus limited. Haydel v. Hurck, 72 Mo. 257; DeLaney v. VanAulen, 84 N. Y. 16; Matter of Chauncey, 119 N. Y. 77; Matter of Dewey, 153 N. Y. 63; Lee v. Brown, 4 Ves. Ch. 362; Garesche v. Levering, 146 Mo. 463; Cross v. Hoch, 149 Mo. 342. (6) When the trustee is given control of the property, and is charged with the duty of collecting and paying over the income, the trust created is an active one, as contradistinguished from a dry passive trust, and in such case the legal title

continues in the trustee to the end of the trust. Simpson v. Erisner, 155 Mo. 157; Webb v. Hayden, 166 Mo. 48. A trust to collect and apply income for the support or education of the beneficiary is an active trust, which keeps the legal title in the trustee to the termination of the trust. Rittgers v. Rittgers, 56 Iowa 220; Grathe's Appeal, 135 Pa. St. 585; Eshleman's Estate, 43 Atl. 201. (7) The devise of an estate to trustees to collect and apply the income thereof to the "support and education" of testator's sons, necessarily limits the continuance of their interest to one for life only. During their lives the income would be required for the purposes indicated, but at their deaths the necessity for its continuance would cease. And with the termination of the duties devolving on the trustees, their trusteeship would also end. Garesche v. Levering, 146 Mo. 449; In Re Boyd's Estate, 199 Pa. 487; s. c., 49 Atl. 297; Brantley v. Porter, 111 Ga. 886. (8) Nor can the trustee for the life tenant, or the life tenant himself, do anything during the continuance of the trust to prejudice the rights of the remainderman, who, at the expiration of the life estate, is entitled to the property. McDonald v. Quick, 139 Mo. 498; Bagley v. Kennedy, 81 Ga. 721; Phillips v. La Forge, 89 Mo. 72; Garesche v. Levering, supra; Cross v. Hoch, 149 Mo. 342. While the trustee of the life tenant might by his conduct permit the interest of his beneficiary to be lost by adverse possession. Walton v. Ketchum, 147 Mo. 219; Schiffman v. Schmidt, 154 Mo. 213; Simpson v. Erisner, 155 Mo. 163. Yet no such consequence can befall the interest of the remainderman, whose right of action arises for the first time on the death of the life tenant. Hall v. French, 165 Mo. 441; Reed v. Lowe, 163 Mo. 535; Thomas v. Black, 113 Mo. 66; Melton v. Fitch, 125 Mo. 290; Sherwood v. Baker, 105 Mo. 478; Schumate v. Snyder, 140 Mo. 77; Howell v. Jump, 140 Mo. 457. Any other rule, in the language of this court, "would deprive a person of his property without due process of law—without giving

him a day in court." Hall v. French, 165 Mo. 442.
And a conveyance by the trustee in violation of his trust
is void. Binns v. Lafarge, 191 Ill. 598; Williams v.
Evans, 154 Ill. 98. At most until set aside, his grantee
holds subject still to the original trust, and stands in
the shoes of the original trustee. McDonald v. Quick,
139 Mo. 499. (9) Looking at the Cabanne will, and
using the language of the Supreme Court of Pennsyl-
vania, in construing a similar instrument, it may be very
properly said: "The first notable observation on this
clause is that there is no direct gift at all to the devisee,
but only a devise in trust for her. While not in itself
conclusive, this suggests at once an intent not to give the
fee, else why interpose a trust. The most ignorant
property owner knows the difference between owning a
house himself, and having the use of it under a trust;
and if the testator meant to give the full ownership in
fee, there is no purpose disclosed in her will, which
would have prevented the easiest and most natural way
of doing it by direct gift. . . . We are of opinion
that though there is no devise over, the will shows a
clear general intent to give only a life estate." In
re Nevin's Estate, 192 Pa. St. 258; s. c., 34 Atl. 996. In
the administration of the trust in the Cabanne will, the
trustees are not to impair "the principal or capital."
(10) Using again the language of this court: "To
prevent the happening of the incongruous condition of
the estate passing partly by will and partly by descent,
words may be supplied, transposed or changed in the
will, so that the instrument may not perish and the man-
ifest intention of the parties be not defeated by the pal-
pable error of the scrivener." RoBards v. Brown, 167
Mo. 457; Briant v. Garrison, 150 Mo. 668; Rines v.
Mansfield, 96 Mo. 398; Presnell v. Headley, 141 Mo.
194; Thompson v. Thompson, 115 Mo. 67; Nichols v.
Boswell, 103 Mo. 160; Wolfe v. Dyer, 95 Mo. 545;
Johnston v. Bowlware, 149 Mo. 451; Jobe v. Dillard, 104

Tenn. 658; s. c., 8 S. W. 324. (11) The placing of the trustees in charge of all of the testator's property, "to manage and control and superintend the same" did not confer upon the trustees any power of sale. Nor, if any son should be found "capable of exercising a safe, prudent management thereof," would the placing of him in charge of a share of the estate "to manage for himself," confer on the son any such power. The testator himself understood this, when, in order that they might exercise this power to the extent he was willing, he gave the trustees express authority "to sell and dispose of" all of his property, except the three hundred arpens on the River des Peres. Power to "manage, control and superintend" does not confer power to sell and convey. The words "manage" and "control" seem to mean very much the same thing. And the word "superintend" means but little, if any, more than to supervise or oversee. But none of these words nor all of them combined confer a power of sale. Watson v. Cleveland, 21 Conn. 542; Palmer v. Chesebro, 55 Conn. 115; Com. v. Waller, 5 How. (Miss.) 186; Ure v. Ure, 185 Ill. 117; Youngworthy v. Jewell, 15 Nev. 48; Commonwealth v. Johnson, 144 Pa. St. 381; Duncan v. Hartman, 143 Pa. St. 604; Roberts v. State, 26 Fla. 362; Porter v. Thomas, 23 Ga. 472; Blanton v. Mayes, 58 Tex. 429; Anderson v. Stockdale, 62 Tex. 61; Brammel v. Cole, 136 Mo. 213; Garesche v. Levering, 146 Mo. 436; Cross v. Hoch, 149 Mo. 341, 342.

*Judson & Green* and *Edw. Cunningham, Jr.,* for respondent.

(1) The vesting of an absolute estate in the trustees by express words of inheritance in clause 2 of the will, without any words of limitation and with no contrary intention appearing by the text, vests in the *cestui que trust* an equitable interest co-extensive with the legal estate of the trustees, *i. e.,* a fee. 3 Jarman on

Wills, pp. 28 and 29; Challenger v. Shepard, 8 T. R. 597; Knight v. Selby, 3 M. & Gr. 92; 3 Scott N. S. 409; Moore v. Cleghorn, 10 Beav. 423; affirmed 12 Jur. 591; 17 L. J. Ch. 400; Hudson v. Ball, 14 Sim. 558; Yarrow v. Knightly, 8 Ch. D. 736; Bennett v. Bennett, 2 Dr. and Sm. 273; Madem v. Taylor, 45 L. J. Ch. 569; Bispham's Principles of Equity (5 Ed.), sec. 65; Webster v. Cooper, 14 How. (U.S.) 499; Cornwell v. Wulff, 148 Mo. 552. (2) This fundamental rule of the vesting of equitable interest co-extensive with the legal estate, is not excluded by conditional limitations for defeasance of the equitable estate in certain contingencies which fail, as in the provision for death without issue under the age of twenty-one years in the case at bar. 3 Jarman on Wills, sec. 29. (3) The legal estate vested in the trustee was controlled by the rule applicable to all estates in trust, that the legal estate of the trustee continued so long as the trust required, and no longer. Under this law the trust was properly terminated when the sons, the only beneficiaries declared by the will, reached majority and in the judgment of the trustee were "capable of a safe and prudent management of their estates." The execution of the deed by the trustees in the voluntary partition was conclusive evidence of such determination under the terms of the will. Pitts v. Sheriff, 108 Mo. 116. (4) The title of respondents in this case does not depend upon the exercise of the power of sale vested in the trustee, but upon the conveyance of the estate by the beneficial owners in fee after the use created by the trust was vested in them by the trustee. The discretionary powers of management, control and superintendence vested in the trustee in this administration of the trust estate, as declared in clauses 2, 4, 5, 7, 10 and 11 of the will, are therefore immaterial in the determination of the issue here involved. (5) The devise over in clauses 3 and 6 of the will, in case of death of sons without issue under twenty-one, is a conditional limitation, which has failed to happen; but

this direction in a will of itself denotes the vesting of an estate in fee, subject to this conditional limitation. This was the rule at common law. 3 Jarman on Wills, sec. 26. (6) The statute of 1845 (sec. 7, p. 220) abrogating the rule in Shelly's case, has no application. There is no limitation in the will to "heirs" or "heirs of the body" of persons to whom life estates were given; and in the absence of such limitation, there is no basis for the application of the rule in Shelly's case or the statute repealing the same. The statute does not apply, except where an estate tail at common law is created by the will; and where but for the statute the rule in Shelly's case would apply. 3 Jarman on Wills, 99; Emmerson v. Hughes, 110 Mo. 631; Godman v. Simmons, 113 Mo. 127; Tesson v. Newman, 62 Mo. 198; Yocum v. Siler, 160 Mo. 281. (7) The fundamental principle clearly applicable to the will in question, that a testator is presumed to intend to dispose of his entire estate, is also declared by the statute in force at the time of the probate of this will, now section 4950, R. S. 1889. This applies to conveyances by will as well as by deed. Cross v. Hoch, 149 Mo. 343. As to the general principle in will construction, see: RoBards· v. Brown, 167 Mo. 457.

## In Banc.

MARSHALL, J.—The following opinion heretofore rendered by Division Number One is hereby adopted as the opinion of the Court in Banc.

*Robinson, C. J.,* and *Brace, Gantt, Burgess* and *Fox, JJ.,* concur; *Valliant, J.,* dissents.

## In Division One.

MARSHALL, J.—This is a proceeding, under sections 650 and 651, Revised Statutes 1899, by the plaintiff, who is in the possession of lot 21 of Forest Park

addition to the city of St. Louis, fronting one hundred feet on the south line of Westmoreland Place, in United States Survey 2036, and who acquired an apparent fee-simple title thereto, by mesne conveyances, from the defendant Joseph Charless Cabanne, against said Joseph Charless Cabanne and his children, and against his brother Sarpy Carr Cabanne and his children, to have the court adjudge and define the title, estate and interest of the parties severally in and to such real estate.

The facts are undisputed, and are these: The lot in question is a part of a tract of three hundred arpens, which covers what is now Westminster Place between Kings Highway and Union Avenue, Portland Place, Westmoreland Place, Forest Park Terrace and the Northern part of Forest Park, and which tract constituted a portion of the real estate that was owned by John Charles Cabanne in his lifetime, and who left surviving him, his widow, for whom other provision was made and accepted, and his three sons, John Peter Cabanne, Joseph Charless Cabanne and Sarpy Carr Cabanne, all of whom were under twenty-one years of age and unmarried at the time of his death.

On May 27, 1854, the father made his will, which is all in one paragraph, except the attestation clause, but which for convenience counsel for the parties hereto have divided into fourteen paragraphs, and which will, so divided, is as follows:

"1. I, John Charles Cabanne, do make this, my last will and testament, hereby revoking all former wills made by me.

"2. All my estate, real, personal and mixed, I give, devise and bequeath to John P. Sarpy and Lucien D. Cabanne, and to the survivor of them and to the heirs of such survivor, in strict trust, however, that they will take charge of, manage and control and superintend the same according to their best judgment, discretion and skill, so as to derive therefrom the largest income and revenue which is consistent with

the safety of the principal or capital. They shall apply the income received by them from said estate to the support and education of my children (whose names are John Peter Cabanne, Joseph Charless Cabanne and Sarpy Carr Cabanne) in equal proportions.

"3. If any of my children die before arriving at the age of twenty-one years, and without issue, the share of such child shall go in equal proportion to my surviving children.

"4. I wish the education of my children to be as thorough and perfect as the means I leave at the disposal of my trustee and the aptitude of my children to receive instruction will permit.

"5. And I especially exempt my trustees herein named from giving any security for the performance of the trust confided in them. The trust herein created is a personal one.

"6. In case of the death of all my children without issue within the age of twenty-one years, my will and desire is that my estate, real and personal, shall vest in my brothers, Lucien D. Cabanne and Jules L. Cabanne, and their heirs and assigns forever.

"7. I hereby authorize, require, order and command my said trustees, or the survivor of them, to disinherit, divest or deprive any of my children from all or any right, title or interest in the whole or any part of my estate, real, personal or mixed, if said trustees or the survivor of them shall at any time be of the opinion that such child has become a drunkard, gambler, or spendthrift; that he would probably spend his estate, except that such child shall be allowed such sum that said trustees, or the survivor of them, shall deem sufficient for his maintenance, according to his rank and condition in society, and the interest that such child may be deprived of, as aforesaid, shall be given by said trustees, or the survivor of them, to my other children, to be equally divided among them.

"8. I hereby appoint said trustees, and the sur-

vivor of them, guardians of said children, and to take possession of and protect and control them according to law.

"9. I desire that my oldest son, John Peter Cabanne, shall have the choice of his share in my tract of three hundred arpens of land in the county of St. Louis and State of Missouri, on the River Des Peres, about four miles west of the city of St. Louis. [This tract included the premises in controversy.]

"10. My said trustees or the survivor of them, shall have power to sell and dispose of absolutely the whole or any part of my property, real, personal or mixed, except said three hundred arpens, and to make, execute, acknowledge and deliver all necessary conveyances thereof, and receive and receipt for the purchase money.

"11. It is my express will, desire and command that the said trustees, or the survivor of them, or the heir or heirs of such survivor, shall not give to my said children, or either of them, his share or shares of my estate to manage for himself or themselves until they or he shall, in the opinion of the said trustees, or survivor, or the heir or heirs of such survivors, be fully capable of exercising a safe, prudent management thereof. The same may be conveyed in trust for my said children for their respective shares.

"12. I hereby appropriate the sum of two thousand dollars for the purpose of erecting a monument to my father and mother, under the direction of my executors.

"13. If my trustees, or the survivor of them, shall deem any of my slaves worthy of their freedom, they may, if they deem proper and advisable, emancipate them and set them free; but, if they should think said slaves, or any of them, unworthy of freedom, they may sell such as they do not choose to emancipate. Provided, however, that my mulatto slave 'Ben' aged about twenty-nine years, shall be emancipated by my

executors, and they shall have no discretion in the matter.

"14. I do hereby appoint John B. Sarpy and Lucien D. Cabanne, executors of this, my will.

"In witness whereof, I have hereunto set my hand and seal this 27th day of May, 1854.

"JOHN CHARLES CABANNE."

John Charles Cabanne died in the same year, and his will was probated on July 22, 1854.

John B. Sarpy, one of the executors and trustees named in the will, did not qualify. Lucien D. Cabanne the other executor and trustee accepted the trust, qualified and acted as such.

As above stated, his three sons were minors and unmarried at the date of his death, but in 1863, the oldest son, John Peter Cabanne died, at the age of twenty-seven years. He had never received his share of the estate from the trustee, nor had he exercised his right of choice of the three hundred arpens which was conferred upon him by the ninth paragraph of the will. But he left a will whereby he devised his share or interest in his father's estate to his two brothers, Joseph Charless and Sarpy Carr Cabanne, who are still alive and are parties to this suit.

In 1869 Joseph Charless Cabanne and Sarpy Carr Cabanne made a voluntary partition of the land devised by their father's will. They executed deeds to each other for their respective shares and the trustee Lucien D. Cabanne joined in the same. By this partition the three hundred arpens was divided, and the southern part thereof, covering what is now Portland Place, Westmoreland Place, Forest Park Terrace and a portion of Forest Park, and including the property in controversy here, was conveyed to Joseph Charless Cabanne, and this lot was afterwards sold and conveyed by him and his wife and passed by mesne conveyances to the plaintiff herein. Thereafter in 1872 Lucien D. Cabanne, the trustee, made another deed to Sarpy Carr

Cabanne, wherein he recited that by the former deed it was intended to convey said land to Sarpy Carr Cabanne (that is, the share conveyed to him by the partition deeds of 1869) "as fully as said trustee had power to convey the same; said Sarpy Carr Cabanne being in the opinion of said Lucien D. Cabanne, surviving trustee, fully capable of exercising a safe and prudent management thereof."

Upon this showing the circuit court adjudged the fee simple title to the plaintiff, and decreed that under the will of John Charles Cabanne no right, title, estate or interest in said lands passed or was limited to the children or issue of the sons, and that none of the defendants have any right, title, estate or interest in the land. After proper steps the defendants appealed.

It thus appears that only questions of law are involved. The defendants' contention, reduced to its last analysis, is that the will gave the sons only an equitable life estate, and that the fee was limited to the heirs of the sons by necessary implication, and therefore the plaintiff acquired only a life estate in the lot in question, and that upon the termination of the lives of Joseph Charless and Sarpy Carr Cabanne the fee will pass to their heirs. This of course treats the voluntary partition and the deeds from the trustee as void, or at any rate as effective only so far as the life estate is concerned.

On the other hand the plaintiff's contention is that the sons acquired an equitable fee simple estate under the will, the legal title being in the trustee only for a particular purpose and being divested and the trust destroyed by the partition deeds of 1869, in which the trustee joined, and therefore the plaintiff as the mesne grantee of Joseph Charless Cabanne acquired a full fee simple title, and the heirs of Joseph Charless and Sarpy Carr Cabanne acquired nothing by the will of John Charles Cabanne.

## I.

The decisive question is, what interest did the sons of John Charles Cabanne acquire under his will?

The industry, deep research and marked ability of counsel in the case, has left nothing more to be desired in the way of briefs. The discussion has taken a wide range, and has brought out a multiplicity of cases, both in our own State and in foreign jurisdictions, which bear upon the questions discussed by counsel. The briefs for the defendants cover over an hundred pages, and are replete with logic, force and ability, and with citations of cases, while the brief for the plaintiff covers fifty pages and is equally strong, clear and learned. The limits of an opinion preclude an examination or discussion of every point made or of every phase of the case that has been presented. Nor, indeed, is it necessary to follow counsel along all the lines of discussion, or to analyze all the cases cited, in order to solve the problem.

It would serve no good purpose to follow the discussion of counsel as to the rule in Shelly's case, and the change made by our statute in that rule, because the devise in this case, whatever its nature, was not to the sons and their heirs or the heirs of their bodies, and therefore the rule in Shelly's case has no application to this case. Neither is it at all material to the plaintiff in this case whether the grandchildren of the testator take by limitation or by purchase, for if they take at all, the result is the same to the plaintiff, and if they do not take at all, how they would take if they were entitled to take is immaterial.

Likewise it is not necessary to consider what interest in the land the survivors would take, under the third paragraph, from the brother who died, for none of the brothers died before arriving at the age of twenty-one years, and without issue, and therefore the

conditions contemplated by that paragraph never arose. That paragraph is valuable only in considering the general and decisive question of what interest the sons acquired under the will. If the sons acquired only an equitable life estate in the land, then this third paragraph of the will is meaningless, for upon the death of one life tenant his estate would cease, and his life estate could not be extended by the will so as to pass to his brothers—the other life-tenants—but in such a case the fee would go at once as the will devised it or as the statute devolved the descent. Counsel for the defendants, however, differentiate in respect to this phase of the case, between an equitable estate for life and a right to education and support for life out of the income of the estate, and claim that this clause only entitled the survivors to the one-third of such income which would have gone to the deceased brother, so that after the death of one of the three brothers, the two surviving would be entitled to one-half each of the income instead of the one-third each as would be the case if none had died, and in case of the death of two, the longest liver would be entitled to the whole income. This construction of the third paragraph, however, can not be made to harmonize with either the seventh, the ninth or the eleventh paragraphs of the will, as will be demonstrated later in the course of the opinion.

It will also serve no useful purpose to try to harmonize paragraph six with paragraphs seven, nine and eleven, nor to speculate as to whether or not this clause would be void for repugnancy if the will gave the sons of the testator an equitable fee simple estate. For no such question is involved in this case. All of the sons did not die without issue within the age of twenty-one years and therefore no estate ever passed to the brothers of the testator.

Indeed this paragraph can not be made to harmonize with the chief and fundamental contention of the defendants that the testator's sons acquired only an

equitable life estate, or a right to education and support for life out of the income of the property, and that the fee simple remainder vested by implication in the grandchildren. For if this be true, then the attempt of the sixth paragraph to pass the fee to the brothers of the testator upon all his sons dying without issue within the age of twenty-one years, would be limiting a fee upon a fee, or rather, and worse still, would amount to limiting the entire fee to two different persons or sets of persons at the same time, each to the exclusion of the other.

On the other hand if the defendants' contention that the sons acquired only an equitable life estate be correct, then the limitation over to the brothers of the testator would be a valid provision, but in that event the defendants'. contention that the fee was limited by implication to the grandchildren must fail, for the fee would have passed to the testator's brothers and their heirs and assigns forever.

So, too, if the plaintiff's contention be true that the sons acquired an equitable fee, then the attempt by paragraph six to thus limit the fee to the testator's brothers would be void for repugnancy. For it makes no difference that it is an equitable fee, as courts of equity follow the rules of law applicable to legal estates in such respects, and equitable estates are subject to the same incidents, properties and consequences as belong to similar estates at law. [Tremmel v. Kleiboldt, 75 Mo. l. c. 258; 1 Perry on Trusts, sec. 324.]

But this repugnancy need not trouble anyone in this case, for no such thing ever happened and the testator's brothers or their heirs or assigns are not parties to this case, nor are they asserting any rights.

So, too, the power of the trustee to disinherit any of the sons who became a drunkard, gambler or spendthrift, needs no consideration, because none of them became such and none of them were ever disinherited. But if the defendants' contentions that the sons acquired

only a right to education and support or at most an equitable life estate and that the fee simple remainder was limited by implication to the grandchildren, be true, then whether any or all of the sons were or were not disinherited is immaterial, so far as the defendants' right to the remainder in fee is concerned, for the defendants' estate in the land would not be affected in any manner, nor would their right of possession be hastened or postponed, by reason of the fact that any of the sons were so disinherited or not.

The provisions of paragraph ten allowing the trustees to sell any part of the land, except the three hundred arpens, is also unimportant, for it does not appear that the trustees sold any of the land whatever. Nor is it at all clear what light this paragraph can shed upon the nature or character of the estate devised to the sons. For whether such estate was a life estate or a fee simple, if the power was legally vested in the trustee it could be exercised and the trustee would be accountable for the proceeds, and the interest of the sons and of the defendants would be the same in the proceeds that it was in the land before it was sold.

The elimination of the foregoing considerations from this case will serve to make the solution of the problem that much easier.

Both parties concede that it was the intention of the testator to dispose of his whole estate, and not to leave any part to descend according to the statute, and this is the correct legal presumption. [RoBards v. Brown, 167 Mo. l. c. 457.]

Both parties also concede that the will must be read from its four corners; that the true intent and meaning of the testator must be ascertained, if possible; that in reading any ambiguity in the will the court can best understand the will by putting itself, as far as may be, in the place of the testator and reading the will in the light of the testator's environment at

Vol 177 mo—23

the time he made the will; that when the true intent is ascertained, all technical rules of construction must give way, and that words may be supplied or omitted, or sentences transposed in order to ascertain and effectuate the intention of the testator. And such is the law. [Small v. Field, 102 Mo. l. c. 122; Cross v. Hoch, 149 Mo. l. c. 336; Hurst v. Von De Veld, 158 Mo. l. c. 246; Walton v. Drumtra, 152 Mo. l. c. 497; RoBards v. Brown, 167 Mo. 447.] The expressions of the testator referring to "my property" are referable to the property at the time the will was written, and not to the date it took effect; and are therefore valueless in determining what estate passed to anyone under the will. [RoBards v. Brown, 167 Mo. l. c. 461.]

In the light then of these conditions and principles of law this will must be examined. The first thing that attracts the attention, in reading the will, is, that it is manifestly *inops consilii*, yet it is the work of a man of affairs, who had more or less idea of legal terms, and of the preparation of a will. Stripped of all technical terms, and reduced to every-day English, and read according to its good sense and true intent, the tale it tells is this: The testator felt his end approaching. He had a large estate. He had a wife and three sons, who were minors. He felt the necessity and propriety of providing for them, and, at the same time, of protecting them against the baneful consequences of their own, possible, imprudence. He first made a provision for his wife, which proved acceptable to her. He then decided to treat all of his sons equally, except that he gave his oldest son his choice of his share of the three hundred arpens. But he realized that they were all minors, and unable to properly manage their shares for themselves. He knew that if they were left with property, some one would have to be appointed to manage it, and likewise that some one would have to be appointed guardian of their persons and look after their education. Naturally he preferred to have some

one of his own blood who had family pride and affection, act as guardian and curator, than to have a stranger appointed by a court who would perform such acts merely as a matter of business. He also knew that when the minors attained their majority the duties and powers of guardian and curator would cease, and the son would be entitled to be put into possession of his own. He evidently knew that it was within his power to continue a protectorate over the son and over the property beyond the time that the son attained his majority, and that this could be done by placing the property in the hands of trustees, and clothing them with a power to withhold the share of any one, or all of the sons, until such time as they had shown that they were not drunkards, gamblers or spendthrifts, and were competent to be trusted with the management and control of their own.

Standing, as the testator did, in the fast closing shadows of the evening of life, the veil that curtains the future about was lifted, and he saw the panorama of the coming events after he would have laid down the burden of life, and in his own way he attempted to provide protection and care for his loved ones after he was gone. Having provided for his spouse, by means outside of his will, his whole thought, in the preparation of this will, was for his three sons. They were yet children, and the idea of their growing up and having children never seemed to have occurred to him, or if it did, he must have thought that as he provided for his children so his children would provide for their children, and therefore he gave no thought to any grandchildren. No one else than his sons seem to have appealed to his sense of duty or to his bounty.

These were his environments, and these the fears and purposes that he had in mind.

The scheme he evolved was to give each son an equal share in his estate, preferring the oldest son only to the extent of allowing him to take his choice

of the three hundred arpens. He placed the whole estate in the hands of trustees, who were of his blood, and directed them to control and manage it, to educate his sons as well as the income of his property and their aptitude permitted, and to support them, whether as infants, or as unworthy sons, drunkards, gamblers or spendthrifts, "according to his rank and condition in society."

He empowered the trustees to hold the shares of each in trust, only using the income as aforesaid, and not to give any son his share until they were satisfied that he was fully capable of managing his share for himself, and if any son turned out to be a drunkard, gambler or spendthrift, he authorized the trustees to retain the management of his share, and to allow him only enough for his maintenance according to his rank and condition in society. Then it occurred to him that one of his sons might die before attaining majority, and without issue, so, to prevent the share of such son going to any one else, even in part, he provided that the share of such son should go to the surviving sons. Then it seemed to occur to him that all of his sons might die within the age of twenty-one years, without issue, so, to keep the property in the hands of his blood kin, the testator provided that in such event it should go to his two brothers, and their heirs and assigns forever. He then appointed the trustees guardians of his children. This is the whole scheme of the will. Reduced to its last analysis, and leaving out the provisions in reference to one or all of the sons dying without issue, the scheme of the will is found in the second, seventh, eighth and eleventh paragraphs of the will, and that scheme is, first, vest the property in trustees for the benefit of the three sons; second, appoint the same persons to be executors, trustees and guardians; third, have the trustees hold the property and use the income for the education and support of the sons, not only until they attain majority, but until such time as the trustees

are satisfied that they are fully capable of properly managing it, and then "give" each one his share, provided, however, that if any son turns out to be a gambler, or drunkard or spendthrift, don't "give" him his share, but continue the trust, and allow him only such sum as is sufficient to maintain him according to his rank and condition in society.

It is true that the will does not affirmatively command the trustees to "give" each son his share whenever they are satisfied that he is fully capable of managing his share, and that the will employs the negative form of expression, to-wit, that the trustees *"shall not give to my said children, or either of them, his share or shares of my estate* to manage for himself or themselves until they or he shall, in the opinion of the said trustees, or survivor, or the heir or heirs of such survivors, be fully capable of exercising a safe, prudent management thereof." But the form of expression employed is immaterial, and the rights of the devisees and the duties of the trustees are the same, whether an affirmative command was employed, or negative order given, for, at last, the thing to be done or not to be done was to give or not to give to each son his share in the event the trustees were satisfied he was or was not capable of managing his own.

Thus the intent and meaning of the testator was as plainly expressed as it ought reasonably to be expected from one who was using language and terms of which he was not a master, to accomplish a lawful purpose. The meaning is clear, although the words employed to express it may not have been as apt as might possibly have been found to clothe the idea in.

The eleventh paragraph of the will can not be harmonized with the idea or theory that the sons were given only an equitable life estate or a right to education and support for life, with a remainder in fee, by implication, in the grandchildren, nor in fact with any other idea than that the sons were given an equitable

fee simple estate, and that the trust should cease and
the legal and equitable titles should unite in the sons,
if and when they proved themselves capable of handling
their own affairs. And this occurred, when in 1869, the
sons made a voluntary partition, and the sole acting
trustee joined in the deeds. That act was a sufficient
legal expression of opinion by the trustee that the time
had arrived and the conditions arisen when it was his
duty and the sons' right to have the whole title vest
in the sons and to end the trust. Thereafter each son
had the absolute fee simple title to the share allotted to
him and could convey a good title thereto. The use
of the words in this paragraph ''to manage for him-
self'' do not have the effect and was not intended to
cut down or define the nature or character of the estate,
but were intended only to terminate the trust. The lot
in question was thus vested in Joseph Charless Ca-
banne, and has been conveyed by mesne conveyances to
the plaintiff, and he is the owner of the fee simple title,
and none of the defendants have any right, title, in-
terest or claim in or to the same.

It thus appearing that an equitable fee simple title,
to afterwards ripen, on certain conditions, into a full
legal and absolute fee-simple title was intended by the
will, and not a mere life estate, there was no necessity
under the statute as it then existed and now exists for
the will to contain words of inheritance. [R. S. 1845,
sec. 47, p. 1085; R. S. 1899, sec. 4646.]

So also as a fee simple estate was intended, there
could be no limitation, by implication, to the grand-
children. Such a limitation by implication depends
upon the predicate that the estate of the first taker is
found to be only a life estate, and no provision is made
for the devolution of the fee thereafter.

A full discussion of the cases cited by counsel
would only result in the same conclusion as that here
reached, and it is deemed best to clothe this opinion

only in the fewest, plainest and easiest understood words possible.

The judgment of the circuit court is right and is affirmed. All concur, except *Valliant, J.,* who dissents.