EVAH EVANS V. FRANK RANKIN ET AL., Appellants.—44 S. W. (2d) 644.

Division One, December 21, 1931.

412

*A. Moody Mansur* for appellants.

*Lavelock, Kirkpatrick, Clark & Garner* for respondents.

·HYDE, C.—This is an action to determine title to real estate disposed of by the will of Letha Evans, deceased, and remove a cloud from the title.

After providing for the payment of debts and a $50 bequest to a cemetery, the following portion of the will disposed of all her property:

"3. I will, devise and bequeath to George F. Mansur all the residue of my estate and effects, both real and personal, in trust for my daughter, Evah Evans, during her natural lifetime and after her death then one-half (½) of said estate to go absolutely to the heirs of Lorenzo D. Evans, and one-half (½) of said estate to go absolutely to my heirs; said trustee is hereby given absolute right, power and authority to invest, manage and control said trust estate and with absolute discretion from time to time during the life of my daughter, Evah Evans, to pay all or any part of the income of said trust estate, and the investments thereof, or if he shall from time to time think fit, any part of the capital thereof, unto my said daughter; or at his absolute discretion to apply the same for the maintenance or personal support of my said daughter in such proportions and in such manner as my trustee in his absolute discretion shall from time to time think proper."

In addition to personal property more than sufficient for the payment of debts, expenses of administration, and the cemetery bequest, Letha Evans owned forty acres of land in Ray County. Evah Evans, the plaintiff, was the only daughter of Letha Evans and Lorenzo D. Evans. Her father, Lorenzo D. Evans, died about six years prior to the death of her mother, Letha Evans. The pleadings are our information as to the facts and they only give us the relationship of the parties and the will. There are no disputed questions of fact. Letha Evans had four brothers who were all living at the time of her death. They were made defendants, as was the trustee named. Lorenzo D. Evans had no brothers or sisters who survived him, but he had a deceased brother and four deceased sisters, each of whom left surviving descendants. Their descendants are the other defendants.

Plaintiff's petition alleged that the proper construction of the will was that plaintiff was the owner in fee simple of the forty acres, which was the only part of the estate of Letha Evans involved in this suit. Plaintiff's claim was, that she was the only child and sole heir of both Lorenzo D. Evans and Letha Evans, and that as such she took, by it, both the beneficial interest in the trust estate and the remainder in fee. She alleged that the entire beneficial interest in the land vested in her; that, therefore, she became the owner of the land absolutely in fee simple; and that the part of the will creating the trust created a cloud upon her title to the land,

which diminished its market value. She alleged that the defendants, the trustee, the surviving brothers of Letha Evans and the surviving descendants of the deceased brother and sisters of Lorenzo D. Evans, claim an interest in the land. She asked the court to cancel and discharge the trust contained in the will and construe the will that plaintiff was the owner in fee simple of the land; that defendants had no interest in it; and to remove the cloud, which this part of the will made on plaintiff's title. The trustee, the brothers of Letha Evans and one of the descendants of a deceased sister of Lorenzo D. Evans, filed an answer which alleged their relationship and the relationship of the other defendants to Lorenzo D. Evans or Letha Evans; alleged that the word "heirs," as used in the will, meant "those persons who would constitute the heirs and inherit under the law from said Letha Evans and said Lorenzo D. Evans at the death of said Evah Evans, and should not be construed to mean or include Evah Evans;" and asked that the will be construed that the defendants were contingent remaindermen subject to the trust. The remaining defendants were in default.

The court found that the relationship of the parties was as alleged in the answer; that plaintiff was the owner of the land in fee simple; that the trust provision of the will created a cloud on her title; and that defendants had no interest in the land. The court also found that the will did not, create a spendthrift trust. The decree ordered that the will be construed to vest the fee simple title in plaintiff; and that the trust attempted to be created in the third clause of the will be canceled and for naught held. From this decree defendants appealed. The questions to be determined under the assignments of error are whether or not the defendants, who were relatives of the testatrix and her husband, have any interest in the land, and what, if any, interest the trustee has.

The question of whether the heirs of testatrix and her deceased husband shall be determined at the death of the testatrix or at the death of the life tenant is one upon which the courts are not in accord. In construing similar provisions in wills there have been decisions taking each side of the question. Of course, each case presents some difference in language and circumstances which the courts have considered in attempting to determine the testator's intent.

"The application of the rule that the remainder goes to the persons who answer the description at the time of the testator's death is not prevented by the mere circumstance that the person to whom the previous life interest is given is also one of such heirs or next of kin. But where the person to whom the previous life interest is bequeathed by the will is the sole member of the class described as heirs, etc., to whom a remainder is given, the authorities are not

in entire accord as to the construction to be put on the remainder over. It has been held that the fact that the first taker is also the sole heir does not alter the rule, the remainder over being vested notwithstanding that fact. On the other hand, it has been held that where the life tenant is the sole heir or next of kin at the death of the testator, the remainder will be considered as given to the persons answering the description at the termination of the estate for life, and, since the persons who may at that time be entitled to take the estate are uncertain, the remainder is contingent.'' [23 R. C. L. 550, sec. 93.]

The American and English authorities on both sides of this question are collected in Ann. Cas. 1917a, 862, and 25 Eng. Rul. Cas. 696. This exact situation does not seem to have been previously presented in a Missouri case. However, our decisions have uniformly favored vested estates and the rule is well settled that, unless the testator has by very clear words manifested his intention to the contrary, the persons who take under his will, as the heirs designated, must be determined at the death of the testator. [Palmer v. French, 32 S. W. (2d) 591; Ewart v. Dalby, 319 Mo. 108, 5 S. W. (2d) 428; Ernshaw v. Smith, 2 S. W. (2d) 803; Baker v. Kennedy, 238 S. W. 790; Dunbar v. Sims, 283 Mo. 356, 222 S. W. 838; Deacon v. St. Louis Union Trust Co., 271 Mo. 669, 197 S. W. 261; Carter v. Long, 181 Mo. 701, 81 S. W. 162; Tindall v. Tindall, 167 Mo. 218, 66 S. W. 1092.]

Our statute, Section 567, Revised Statutes 1929, admonishes us to make ''the true intent and meaning of the testator'' our guide in construing the will. This intention must be determined from the will itself. ''It is not what he may have intended to say in the will, but what he said.'' [Pommer v. Bushnell, 316 Mo. 1016, 292 S. W. 417; Wooley v. Hays, 285 Mo. 566, 226 S. W. 842; Cox v. Jones, 229 Mo. 53, 129 S. W. 405.] Appellants contend that testatrix must have meant someone other than her daughter, the plaintiff, when she said ''after her [plaintiff's] death, then one-half of said estate to go absolutely to the heirs of Lorenzo D. Evans and one-half of said estate to go absolutely to my heirs.'' They say this is evident because the plural term ''heirs'' was used instead of the singular term ''heir;'' because the remainder was divided between two distinct classes of persons, namely, the heirs of Lorenzo D. Evans and the heirs of the testatrix; and because, since the testatrix had plaintiff in mind, when she provided for her for her life, she must have had someone else in mind when she disposed of the remainder. Appellants point out that ''it is proper where the face of the whole will, or of the particular clauses relating to a certain subject, warrants, and justice and reason requires it, that the word 'heir' may be construed as 'children' or 'issue' or 'grandchildren' or 'descend-

ants.'" [Gillilan v. Gillilan, 278 Mo. 99, 212 S. W. 348; Naylor v. McRuer, 248 Mo. 423, 154 S. W. 772; Brown v. Tuschoff, 235 Mo. 449, 138 S. W. 497; Fanning v. Doan, 128 Mo. 323, 30 S. W. 1032; Maguire v. Moore, 108 Mo. 267, 18 S. W. 897.] However, the effect of the construction given to the word "heirs" in most of these cases is to favor direct descendants over collaterals. The word "heirs" has been construed in some cases to mean collateral heirs, such as brothers and sisters and their descendants. [Reinders v. Koppelman, 94 Mo. 338, 7 S. W. 288 (excluding an adopted child); Philadelphia Trust Safe Deposit & Insurance Co. v. Isaac (Pa.), 31 Atl. 651; Woodward v. James (N. Y.), 22 N. E. 150; Johnson v. Brasington (N. Y.), 50 N. E. 859; In re Munroe, 177 N. Y. Supp. 783; Ludlum v. Otis (N. Y.), 15 Hun, 410; Gibbon v. Gibbon, 40 Ga. 562; Minot v. Harris, 132 Mass. 528; Russell v. Woodson (Miss.), 111 So. 833.] But in these cases the testator, or the person referred to, had no children and the nearest relatives were collateral heirs.

An English case, Lee v. Lee, 1 Drewry & Smale, 85, 29 L. J. Ch. 788, 6 Jur. N. S. 621, 8 W. R. 443, presented substantially the situation we have here. There the testator left an estate to his daughter, Ann Lee, for life. After her death "to divide equally among my next of kin, but exclusive of my said nephew, Leonard Lee, and my nieces, Mary Jane Lee and Emma Lee." Ann Lee was the testator's only daughter, and survived him. It was argued there, as here, that Ann Lee "ought to be excluded from taking under the gift to the next of kin, because of the assumed impossibility of supposing that the testator intends him to have any thing more than the life interest." The court held that it did not appear "absurd or unreasonable that a person who takes a life interest by virtue of a particular gift to him *nominatim* should also take a further interest either alone or jointly with others, as the case may be, under a gift in the same will to a class, which class as described by the testator clearly includes him." It was also argued there, as here, that "the testator must be presumed to have known that if the same state of circumstances which existed at the time of the will should exist also at the testator's death, his daughter would be his sole next of kin, and that if she were excluded, next of kin at his death would be his brothers and sisters, and his nephews and nieces the children of any deceased brothers and sisters." And it was further argued that the express exclusion of three of his nephews and nieces who would be his next of kin if his daughter was excluded, clearly indicated his intention to exclude the daughter, and further that the words "divide" and "among" imported a plurality of persons intended to take. The court said:

"A testator when making his will must be aware, not only that the duration of his own life is most uncertain, but also that it is

altogether uncertain whether any given individual of his family will survive himself. He may indeed regard it as probable, even *highly* probable, that a certain relation, his only child for instance, will survive him, and he may make a provision for such child in the hope or expectation of that event occurring; but to assume that he regarded that event as certain seems to me to be contrary to reason and common sense. Why are we to assume that it was not present to the mind of the testator that his daughter might pre-decease him? And if it was, or may have been so, may he not have introduced the clause excluding the nephew and two nieces with this view, that if his daughter should happen to die before him, and his brothers and sisters and his nephews and nieces the children of deceased brothers and sisters should happen to be his next of kin, then and in that case the nephew and nieces, whom he names, should be excluded from participating with the others."

The court held that when a "question arises whether a certain individual who comes within the description ought or ought not to be excluded, it is not sufficient in order to exclude him, to show an absence of a clear intention to *include* him; he must show a clear and unambiguous indication of an intention to *exclude* him." And that the language of that will, even with the express exclusion of the nephew and nieces, did not show a clear and unambiguous intention to exclude the daughter from taking under the bequest to the next of kin.

We think this reasoning is sound and that such a holding would be in harmony with the recent decisions of this court, Palmer v. French, supra, and Ewart v. Dalby, supra, which held that, when real estate is devised to one, with a provision over in case of the devisee's death without issue, the will means death without issue during the testator's lifetime, so that the estates devised are vested at the testator's death. See, also, 2 Fearne on Remainders, 340-344. We do not think that the language of Mrs. Evans's will shows a clear and unambiguous intention to exclude her daughter (plaintiff) from taking as the heir of her mother and father. It seems more natural and reasonable to suppose that Mrs. Evans had in mind that her daughter might die before she did and, in that event, desired her property to go one-half to the nearest relatives of her husband and one-half to her own nearest relatives. A person has no heirs until death. Even though plaintiff had survived her mother, it was not certain that Mrs. Evans's heirs would have been the same as the heirs of her deceased husband. Mrs. Evans might have married again and had children who would have been her heirs at her death, but would not have been heirs of Lorenzo D. Evans. Had this happened, and had plaintiff died, before her mother, leaving children, neither plaintiff nor defendants would have ever become

entitled to anything under the will; and those entitled as heirs of Lorenzo D. Evans, at testatrix's death, would not have been the same group as those entitled to take as heirs of testatrix.

It may well be too, to consider what difference it would make, so far as defendants are concerned, whether the remainder is vested or contingent, in case the condition of plaintiff, which existed at the time the will was made, continued until her death and also if this condition changed. If plaintiff took the remainder, then if she survived her mother but died intestate, without issue, and unmarried, defendants, or their descendants, would take the remainder from her, as her heirs, although perhaps not in exactly the same proportion that they would get if they took under the will, as the heirs of Lorenzo D. Evans and testatrix, as contingent remaindermen. Likewise, if Evah Evans survived her mother, but left children surviving her, defendants would take nothing either from her or as contingent remaindermen under the will. Plaintiff's children would be the sole heirs of Lorenzo D. Evans and testatrix, and would therefore be the contingent remaindermen. Also, plaintiff's children would take the remainder if it was held to be vested in her at testatrix's death. The principal difference, in either case, would be that Evah Evans could dispose of the property, in her lifetime or by her will, if the remainder vested in her at the mother's death. We think that if we consider the whole third clause of Mrs. Evans's will, it is apparent that she did intend plaintiff should have the right of disposition of the remainder. The trust provisions of the will give the trustee two distinct powers: First, in his absolute discretion, to turn over to plaintiff any part of the income or of the capital of the trust estate; second, to apply the same for her maintenance and support. The trustee could, thereby, terminate the trust and leave plaintiff in full control of the property in whatever form it might be. He could also terminate it by applying all of the property for plaintiff's support. These provisions seem to us to be strong evidence that Mrs. Evans's intention was that if her daughter survived her she should have the remainder. Why make it possible to terminate the trust and turn the capital of the trust estate over to plaintiff, *if she must then hold it for the benefit of others to take at her death?* To give the will the construction, for which defendants contend, would be to say, if we follow their argument to its logical conclusion that, in case the trustee saw fit to turn any of the property over to plaintiff, she would have no right to spend a single cent of the principal, which might be turned over to her, but, instead, must hold it intact for the benefit of contingent remaindermen. Then too, the use of all the estate by the trustee, for plaintiff's support, would effectively dispose of the remainder. If the trust is valid, the remainder is, therefore, liable to be defeated

by the power of disposition given to the trustee. Plaintiff was the only person in the class, to whom the will gave the remainder, if it vested at the death of the testatrix. We hold that it did vest at her death; that plaintiff did take it; and that the defendants, who are the brothers and sisters and the descendants of the brothers and sisters of Lorenzo D. Evans and Letha Evans, have no interest in it whatever.

It remains to be determined whether or not the defendant, trustee, has an interest. Plaintiff's claim, that he has no interest, is based upon the case of Peugnet v. Berthold, 183 Mo. 61, 81 S. W. 874. In that case a testator gave half of his estate to his son (his only child) and half to another, as trustee, for the son. The trustee was given power to manage and invest the one-half interest and pay the income to the son during his life. The trust was to cease at the son's death. The testator gave his son the power to dispose, by will, of the one-half interest held by the trustee; but he did not, himself, make any disposition of the fee by his will. The court held that the testator died intestate as to the fee; that since his son was his only heir, the fee went to the son, by the statute of descents, without qualification; and that the trust was, therefore, inoperative. In effect, the holding was that, when the son inherited the fee, he got all the estate there was and nothing was left for the trustee to take, under the will, upon which the trust could operate. The court, however, points out that there is a distinction between the situation in that case, where the fee was inherited because of the failure of the will to dispose of it, and a case where the fee comes by the same instrument creating the trust or power of disposition. It seems that this would have some bearing at least, upon the question of the intent of the testator.

The present case is not a case where the will failed to dispose of the fee. The will disposed of the remainder in fee to the heirs of Lorenzo D. Evans and the heirs of the testatrix. It happened that plaintiff was the sole heir of each. It is plaintiff's theory that it was the intention of her mother, as expressed in her will, that plaintiff should take the remainder in fee if the conditions, existing at the time the will was made, existed at the time of her death. We have sustained this contention. How, then, can we say that she did not intend for plaintiff to take the remainder, if she became entitled to it, subject to the trust? Plaintiff's mother created the trust for plaintiff's life by the same instrument, even by the same paragraph, by which she provided for her to take the remainder in fee. She must have as clearly intended the land to be held in trust during plaintiff's lifetime as she did that plaintiff take the remainder, because the trust could not take effect unless plaintiff did outlive her, and, likewise, plaintiff could only take the remainder if she outlived

her mother. So the same conditions were necessary to make the trust come into existence that were necessary to give plaintiff the remainder. We certainly, then, cannot escape the conclusion that, if plaintiff's mother intended that plaintiff take the remainder, that she intended that plaintiff take it subject to the trust.

Is there any principle of law which makes this impossible? "Where the legal and equitable estate in the same land becomes vested in the same person, the equitable will merge in the legal estate; for a man cannot be trustee for himself nor hold the fee which embraces the whole estate and at the same time hold the several parts separate from the whole." [1 Perry on Trusts, 588, sec. 347.] However, there can be no merger here because there is intervening, between plaintiff's equitable life estate and her ultimate estate in fee, the legal life estate in the trustee, and, also, as we have pointed out, the trustee has power to dispose of the remainder. The absence of any intervening estate is essential to a merger. [Asch v. Asch (N. Y.), 21 N. E. 70; In re Moore's Estate (Pa.), 48 Atl. 884.] The authorities on this subject are cited and discussed in 37 A. L. R. 1413 (note), and in 2 A. L. R. 579 (note). It is held, in many cases, that where the only purpose of the trust is to preserve the corpus of the fund for the person entitled to receive it, the acquisition by the life beneficiary of the right to receive the corpus at the termination of the trust, whether by purchase or inheritance, gives the beneficiary the right to have the trust dissolved. [2 A. L. R. 579, note, and cases therein cited.] It is also held, in many cases, that the acquisition of the remainder, by the life beneficiary, will terminate the trust only where the effect is to do away with the necessity of its continuance, and that it will not have such effect where the evident purpose of the trust is to put the corpus of the fund beyond the hazard of impairment and waste during the life of the beneficiary. [2 A. L. R. 579, note, and cases therein cited.] Even where there would be a merger at law, as where the beneficiary inherits the trustee's title, "equity will preserve the estates separate where the rights and interests of the parties require it." "And there will be no merger if it is contrary to the intention of the parties." [1 Perry on Trusts, 589, sec. 347.] See, also, 21 C. J. 1034, sec. 234; 10 R. C. L. 666, secs. 27-29.

It has not been uncommon to uphold trusts where the beneficiary has title subject to the trust. Trusts for a term of years, or until a certain time, when the trust terminates and the property belongs to the beneficiary in fee, have been frequently upheld in this country. [Shelton v. King, 229 U. S. 90, 33 S. C. 686, 57 L. Ed. 1086; Deacon v. St. Louis Union Trust Co., 271 Mo. 669, 197 S. W. 261; Smith v. Smith, 194 Mo. App. 309; Claflin v. Claflin (Mass.), 20 N. E. 454, 3 L. R. A. 370; Young v. Snow (Mass.), 45 N. E. 686.]

Likewise, this court has refused to terminate a trust for the lives of certain persons, even though these persons consent. [Shaller v. Mississippi Valley Trust Co., 3 S. W. (2d) 726; Dwyer v. St. Louis Union Trust Co., 286 Mo. 481, 228 S. W. 1068.] And a trust to continue until the beneficiary "shall be fully capable of exercising a safe and prudent management" has been upheld. [Simmons v. Cabanne, 177 Mo. 336, 76 S. W. 618.] See, also, Kerens v. St. Louis Union Trust Co., 283 Mo. 601, 223 S. W. 645. So, also, a trust for the life of the beneficiary who (as here) has the remainder in fee has been upheld. [In re Hamburger's Will, 185 Wis. 270, 201 N. W. 267, 37 A. L. R. 1413.] Followed to its logical conclusion, plaintiff's argument would make all such trusts invalid. Some English cases have taken this view, but the weight of authority in the United States upholds such trusts. [37 A. L. R. 1423, note.] The trust in this case is not a dry or passive trust, which would be executed by the Statute of Uses. [Sec. 3103, R. S. 1929.] It is an active one by which the trustee is given complete management and control and absolute discretion. Such a trust will not be terminated at the beneficiary's request when "to end it would be to thwart the wish and intention of the testator." [Shaller v. Mississippi Valley Trust Co., 3 S. W. (2d) 1. c. 730.]

Plaintiff's counsel evidently concede that what is known as a "spendthrift trust" could not be terminated at the beneficiary's request, since they argue that this is not such a trust, which it has been held, must be "the gift to the donee only of the income." [Kessner v. Phillips, 189 Mo. 515, 88 S. W. 66.] Mrs. Evans's will gives the trustee the power, in his absolute discretion, to terminate the trust during plaintiff's life, by paying to her all of the capital thereof, or by using it all for her maintenance. But we do not think the fact that the trustee can terminate it before plaintiff's death would, under the above authorities, defeat it. It would rather seem to be strong evidence of Mrs. Evans's intent that the remainder should be subject to the trust. There is authority that, where a beneficiary has the right to receive from a trust fund, whether principal or income, as much as may be necessary for her comfortable support, if the beneficiary also becomes entitled to the reversionary interest in the trust fund, as the legatee of the person to whom such reversionary interest was given by the testator, she may terminate the trust. [In re Bloodgood, 172 N. Y. Supp. 509.] That decision was based upon a New York statute. In this case, the plaintiff has no right to the corpus, during her lifetime, but it is within the absolute discretion of the trustee whether any of it is ever used for her or paid to her. Furthermore, this power, which the trustee has, makes it possible that the remainder will be defeated by his use of the corpus for plaintiff's maintenance. The testatrix clearly mani-

fested her intention to have the property controlled and the proceeds spent by someone other than plaintiff. She, no doubt, had a good reason for doing so, but, at any rate, it was her property and she had a right to do so. In speaking of a provision in a will, which those taking under the will sought to avoid, this court once said: "He [testator] preferred his own judgment in that matter to theirs [devisees]. The property was his and he had a right to do with it as he pleased, and those who take of his bounty must take it on the terms he imposes." [Stewart v. Jones, 219 Mo. 614, 1. c. 637, 118 S. W. 1.] In another case, it said: "He preferred that a trustee of his own naming should husband his property, and see that his daughter got the profits thereof, from the hands of that trustee, to the day of her death. The desire of the old man as expressed in his will should be executed, and equity will not interfere with the carrying out of his plain desire." [Dwyer v. St. Louis Union Trust Co., 286 Mo. 1. c. 489.]

We do not say that reasons or conditions might not exist or could not arise which would give a court of equity a right to terminate this trust. "Equity has power to terminate an express trust in whole or in part even before the expiration of the term. . . . but the jurisdiction is sparingly exercised." [Shaller v. Mississippi Valley Trust Co., 3 S. W. (2d) 1. c. 729.] That question is not now before us. Plaintiff proceeds upon the theory that it has terminated, or that she has a right to have it terminated, as a matter of law. Our conclusion is that she does not have that right and that the trust is valid.

The circuit court should decree that defendants, who are brothers or sisters or descendants of brothers and sisters of testatrix or Lorenzo D. Evans have no interest in the land; and that plaintiff is the owner of the remainder subject to the trust provided for by the will.

The decree is therefore reversed and the cause remanded with directions to enter such a decree. *Ferguson, C.,* concurs; *Sturgis, C.,* dissents.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.