JOSHUA M. SEARS *vs.* CHARLES F. CHOATE & others.

Suffolk.   January 9, 1888. — March 9, 1888.

Present : MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Trust — Termination — Alienation — Equitable Attachment.*

A testator, by his will, after giving the residue of his estate to trustees, in trust to hold, invest, and manage the same, and a sum of money to his only son and heir to be paid him at the age of twenty-one years, provided that " all such parts of the income of my estate, which may be necessary for the support and education of my son, I order to be used for that purpose, and when he shall be twenty-one years old I direct that $4,000 shall be paid to him annually, when he shall be twenty-six years old $5,000 a year, and $10,000 per year when he shall be thirty years old." *Held,* on a bill in equity brought by the son after reaching the age of thirty years, that the trustees held so much of the residue of the estate as was needed to produce the net income of $10,000 upon a simple trust to pay the son the annuity ; that he was the absolute equitable owner of the trust fund and the income, both of which he might alienate and his creditors might reach ; and that he was entitled to have the trust terminated.

BILL IN EQUITY, filed September 19, 1887, against the trustees under the will of Joshua Sears, to terminate a trust created for the benefit of the plaintiff in the residue of his estate. The bill alleged the following facts.

Joshua Sears died on February 7, 1857, leaving the plaintiff his only child and sole heir, then a minor, and a will, which named Alpheus Hardy, Horatio Harris, and Hugh Montgomery as executors and trustees, and contained the following clauses :

" All the rest, residue and remainder of my estate I give to said Alpheus Hardy, Horatio Harris, and Hugh Montgomery their heirs and assigns as joint tenants in trust to hold, invest, manage and take care of the same according to their best knowledge and discretion ; and I wish them to invest one half part of my estate in favorable purchases of real productive estate, stores to be preferred, looking well to the value and titles thereof. And I wish them to invest one half part of said estate in bottom mortgages on estates which shall be considered of twice the value of the money loaned thereon, the titles of such estates to be well examined. ,

"I give to my son Joshua M. Sears the sum of thirty thousand dollars to be paid to him at the age of twenty-one years. All such parts of the income of my estate which may be necessary for the support and education of my son, I order to be used for that purpose, and when he shall be twenty-one years old I direct that four thousand dollars be paid to him annually; when he shall be twenty-five years old six thousand dollars per year, and ten thousand dollars per year when he shall be thirty years old."

The will was duly admitted to probate, and the trustees named therein were duly appointed and qualified as such trustees. Upon the plaintiff's reaching the age of twenty-one years, on December 25, 1875, all the property then in the hands of the trustees, and constituting the residuary trust fund created by the will and not required to pay to the plaintiff the annuity bequeathed to him by the will, was adjudged by this court (120 Mass. 524) to be held upon a resulting trust in favor of the plaintiff, and thereupon was ordered to be paid, and was paid, to him as his own absolute property. Hardy, Harris, and Montgomery, the original trustees named in the will, have since deceased, and the defendants have been duly appointed and qualified as trustees in their stead, and are now acting as such.

Under the provisions and operation of the will, the plaintiff has the entire beneficial interest both in the income of the property held by the trustees for his benefit and in the property itself. The interest of the plaintiff in both the income and the principal of the trust fund is alienable at his pleasure, and is subject to the claims of his creditors. No reasons exist for the perpetuation of the trust, while the further continuance of the same causes the plaintiff unnecessary inconvenience and expense.

The prayer of the bill was, that it might be adjudged that the trust be terminated, and that the trustees might be directed to convey to him, for his own absolute use and benefit, all the trust property now held by them for his benefit.

The answer admitted the allegations of the bill except as to the construction of the will, as to which it also admitted that, "under the provisions and operation of said will of Joshua Sears, the plaintiff has the entire and beneficial interest in the income of the property held by them as such trustees, and also in the

property itself; but whether or not the interest of the plaintiff in both the income and principal of said trust fund is alienable at the pleasure of the plaintiff and subject to the claims of his creditors, these defendants can neither admit nor deny, and most respectfully submit that the same are questions of law to be considered and determined by this court, as also the further question whether or not any reason exists for the perpetuation of the trust."

Hearing upon the bill and answer before *C. Allen*, J., who reserved the case for the consideration of the full court.

*R. Olney*, for the plaintiff.

*J. F. Colby*, for the defendants.

MORTON, C. J. In *Sears* v. *Hardy*, 120 Mass. 524, two cases were considered together. One was a bill in equity by the only child and heir of Joshua Sears, the prayer being that the trustees be ordered to convey to the plaintiff so much of the estate in their hands, and the surplus income thereof, as was not required for the payment of the annuities provided for by the will. The other was a bill by the trustees asking for instructions as to their duties under the will. The fourth prayer was broad enough to include the question raised in the case at bar, but the question was not in fact raised, both parties conceding that the trustees were to retain in their hands enough to support the annuities, and the only question discussed being whether the surplus of the estate should be paid over to the heir at law discharged of the trust. The question now presented was not raised or decided in those cases.

Under the decrees in those cases the trustees retained in their hands sufficient of the property to produce a net income of ten thousand dollars, being the amount of the annuity now payable to the heir at law.

The present bill alleges that the plaintiff has the entire beneficial interest both in the income of the property held by the trustees for his benefit and in the property itself, and prays that this trust may be terminated and the property conveyed to him.

The trustees now hold the trust estate upon the simple trust, as defined in the will, to pay the plaintiff ten thousand dollars per year. There is in the will no limitation over of the estate in any contingency to any other person; there is no discretion

given to the trustees, and there is no provision that the income or the estate shall not be alienable by the plaintiff or attachable by his creditors. It cannot be doubted that under this will the plaintiff took an equitable estate which he might alienate, and which equity would apply to the payment of his debts. *Spar-hawk* v. *Cloon*, 125 Mass. 263.

It is said in the opinion in the former case, that "it is conceded by all parties that, in order to carry out the plain intention of the testator to secure to his son an honorable support, during his life, not exposed to the risks of his improvidence or misfortunes, the trustees should retain in their hands enough of the estate to produce beyond question the annuity provided for in the will." It is quite probable that the testator had this idea or intention in his mind; but if he had, he failed to frame his will in such a way as to carry out his intention. This court has held that the founder of a trust may give an equitable life tenant a qualified estate in income which he cannot alienate and which his creditors cannot reach. *Broadway National Bank* v. *Adams*, 133 Mass. 170. But in order to give such a qualified estate, instead of an absolute one, the language of the founder must be clear and unequivocal to that effect. Taking this will as it is, we should not be justified in holding that the plaintiff took anything less than an absolute equitable estate both in the income and in the corpus of the trust.

There is no doubt of the power and duty of the court to decree the termination of a trust, where all its objects and purposes have been accomplished, where the interests under it have all vested, and where all parties beneficially interested desire its termination. Where property is given to certain persons for their benefit, and in such a manner that no other person has or can have any interest in it, they are in effect the absolute owners of it, and it is reasonable and just that they should have the control and disposal of it unless some good cause appears to the contrary. *Smith* v. *Harrington*, 4 Allen, 566. *Bowditch* v. *Andrew*, 8 Allen, 339. *Inches* v. *Hill*, 106 Mass. 575. *Stone, petitioner*, 138 Mass. 476. *Underwood* v. *Boston Five Cents Savings Bank*, 141 Mass. 305.

In the case before us the trustees hold the fund in question upon a simple trust; the plaintiff is the absolute equitable owner

of the fund and the income ; he may alienate them and they can be reached by his creditors. If the testator had the intention of guarding against his possible improvidence or misfortune, he failed to carry his intention into effect, and thus the reason for the existence of a trust fails.

We are of opinion that the plaintiff is entitled to a decree terminating the trust, according to the prayer of his bill.

*Decree for the plaintiff.*