JOHN S. WAYMAN *et al.* Appellees, *vs.* GEORGE A. FOL-LANSBEE *et al.* Appellants.

*Opinion filed February 23, 1912—Rehearing denied April 11, 1912.*

1. TRUSTS—*equity has power to terminate trust as to part of beneficiaries.* A court of equity, in a proper case, has power to order a trustee to pay or distribute to such beneficiaries as may be entitled thereto their respective portions of the trust estate and continue the trust as to other beneficiaries who, by reason of their minority or other causes, are not entitled to their share.

2. SAME—*when court of equity may terminate trust as to residuary legatees.* Where the death of the testator's only son has definitely fixed the proportion of the trust estate which is to go to the residuary legatees and has removed the only reason for continuing the trust as to them, a court of equity may terminate the trust as to them notwithstanding the trust must be continued as to the beneficiary of the remaining portion of the estate.

3. SAME—*what is not ground for refusing to terminate trust as to residuary legatees.* The facts that the continuance of the trust may benefit the trustee and possibly increase the income of the sole legatee of one-half the estate, or that as to such legatee the trust must be continued until he reaches the age of twenty-five years, and that a fund must be set aside by the trustee to secure monthly payments to such legatee during the trust and a specific legacy at its termination, do not justify refusing to terminate the trust as to residuary legatees whose interests are fixed and vested and as to whom no reason exists why the trust should be continued.

CARTWRIGHT and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

FRED BARTH, FOLLANSBEE, MCCONNELL & FOLLANS-BEE, and ALBERT M. KALES, for appellant George A. Follansbee.

HERRICK, ALLEN & MARTIN, and FRANK E. HARK-NESS, for L. L. Barth, guardian *ad litem.*

BRICKWOOD & BRICKWOOD, (C. STUART BEATTIE, of counsel,) for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

John S. Wayman and ten other residuary legatees under the last will of Reuble M. Outhet filed a bill in chancery in the circuit court of Cook county against George A. Follansbee, individually and as trustee, and John C. Outhet, Jr., for the purpose of having the will construed and for a partition of the estate in the hands of the trustee, or, in the alternative, that the court direct the trustee to distribute to the complainants their respective shares in said estate and for an accounting of the rents and profits received by the trustee and which are claimed by the complainants. The court below held that the estate should be retained by the trustee until John C. Outhet, Jr., attained the age of twenty-five years, unless he should die before that time, and that the complainants were not entitled to a partition, but granted complainants below relief to the extent of requiring the trustee to account for and pay over to complainants their respective shares of the rents, income and profits of said estate during the continuance of the trust. From this decree certain complainants below, and George A. Follansbee, individually and as trustee, and John C. Outhet, Jr., have prosecuted several appeals to this court, which said appeals have been consolidated in this court and will all be disposed of as one case.

The rights of all the parties are derived from the will of Reuble M. Outhet, who died testate on September 18, 1907. He died seized of an estate consisting of $30,000 in cash, $85,000 in other personal property, and real estate estimated at from $700,000 to $1,000,000. He was a widower, about seventy years of age at the time of his death. He had only one child, John C. Outhet, who was about thirty-two years of age. John C. Outhet had one son, named John C. Outhet, Jr., by his first wife. John C. Outhet had married a second wife about a year before the will was made, with whom he was living at that time and at the time

of testator's death. The testator left no lineal descendants except his son, John C. Outhet, and his grandson, John C. Outhet, Jr., who was born August 5, 1899. The complainants below and residuary legatees under the will were cousins or relatives of the testator's deceased wife. The complainants below are all adults and are from forty-five to sixty-eight years of age. Omitting certain unimportant portions thereof, the will is as follows:

"*First*—I give and bequeath unto my son, John C. Outhet, my scholarship in the Northwestern University at Evanston, Illinois, (being the scholarship that was left me by my father's will,) to have and to hold the same as his absolute property forever. I also give and bequeath to him all my household furniture, jewelry, personal adornments and wearing apparel, except my watch and chain, to have and to hold the same as his absolute property forever. I also give and bequeath to him the sum of twenty-five thousand ($25,000) dollars, the same to be paid to him in cash or its equivalent within ninety days after my decease, as his absolute property forever.

"*Fifth*—I give, devise and bequeath to my cousin, George A. Follansbee, all the rest, residue and remainder of my property, of every kind, nature and description and wherever situated, to have and hold the same upon the following trusts, that is to say:

"(1) Said property shall be held by him during the lives of my son, John C. Outhet, and my grandson, John C. Outhet, Jr., and the survivor of them, and twenty-one (21) years thereafter, unless such trust is sooner terminated in some one of the manners hereinafter provided.

"(2) My said trustee is hereby authorized and empowered to manage and control said property to as full an extent as he could do if he was the owner thereof. To that end he is hereby authorized and empowered, among other things, to let and re-let the same and each and every part thereof; to make loans upon the said property or any part

thereof, and to secure the same by mortgages or trust deeds; to improve the same and each and every part thereof; to make repairs thereon from time to time, as in his judgment is needed; to re-build the building or buildings thereon, or any part thereof, from time to time, as in his judgment seems desirable, and to pay for the same either out of the funds or property in his hands or out of loans to be made therefor; to keep said property insured in good and responsible insurance companies; to sell and dispose of said property or any part thereof, and to make proper deed or deeds of conveyance therefor; to pay the taxes, assessments and other impositions that may be levied thereon, as they may from time to time accrue, and, in fine, to do whatever in his judgment may seem best to be done during the time that such property shall be held by him under this trust. My said trustee is also hereby authorized and empowered to make ground leases upon any or all of my property for such time and upon such terms and conditions as to him shall seem best. I mean by the term 'ground leases,' leases upon the ground or fee of any property of which I might die seized, for a long term of years, wherein, as a rule, the lessee makes the improvements thereon.

"(3) So long as my son, John C. Outhet, shall live, I direct that out of the net income to arise from my property so held in trust, other than the premises known as Nos. 116-118 Franklin street, Chicago, Illinois, there shall be paid to him monthly, at the end of each and every month, the sum of two hundred and fifty ($250) dollars. If my said trustee shall be of the opinion that the said sum of two hundred and fifty ($250) dollars per month is not a sufficient amount to be paid over to him, he is hereby authorized to pay over to him such further sum or sums, monthly, in addition thereto, as he may deem proper, until such time as in his judgment he shall deem it best to again commence paying only the said sum of two hundred and fifty dollars ($250) per month to him.

"(4) If my son, John C. Outhet, shall attain the age of forty years, I hereby authorize and direct my said trustee to convey to him at that time, as his absolute property forever, the premises known as 116 and 118 Franklin street, Chicago, Illinois; and in the meantime, I hereby authorize and direct him to pay over to the said John C. Outhet, in addition to the sums named in the preceding paragraph, the net income to be derived from said premises, as often as once in three months.

"(5) In addition to the property aforesaid, I hereby authorize and empower my trustee, whenever at any time in his judgment he shall deem it wise or best, to convey and transfer to my said son, John C. Outhet, such other and further property embraced in and covered by this trust as he in his judgment shall deem best, reserving, however, at all times in the trust hereby created a sufficient amount of property to yield a net income ample to pay the yearly allowances hereinafter provided in favor of my grandchild or grandchildren.

"(6) From the time of my decease I direct my said trustee to pay to my grandson, (who was seven years of age on the 5th day of August, 1906,) at the end of each and every month, the sum of seventy-five ($75) dollars until he shall have attained the age of sixteen years, and thereafter the sum of one hundred ($100) dollars until he shall have attained the age of twenty-five years. Said payments, however, are to be subject to the discretion of my said trustee, and if for any reason he should deem it best to withhold said allowances, or any part thereof, he is hereby authorized to do so. It is my desire that the said payments and allowances aforesaid shall be used, as far as necessary, in his support and education, and if he shall die before attaining the age of twenty-five years such payments shall cease at his death. None of said payments shall continue after he has attained the age of twenty-five years nor after the termination of this trust, as hereinbefore specified.

If there shall be born to my son, John C. Outhet, in lawful wedlock, a child or children other than the John C. Outhet, Jr., and they or either of them shall survive me, then from the time of my decease I direct my said trustee to pay to each of them, at the end of each and every month, the sum of twenty-five ($25) dollars for the first five years thereafter; the sum of forty-one dollars and sixty-seven cents ($41.67) for the second five years thereafter; the sum of fifty-eight dollars and thirty-four cents ($58.34) for the third five years thereafter; the sum of eighty-three dollars and thirty-four cents ($83.34) for the fourth five years thereafter; the sum of one hundred ($100) dollars for the fifth five years thereafter,—said payments, however, to be subject to the discretion of my said trustee, and if for any reason he shall deem it best to withhold said allowances, or any part thereof, he is hereby authorized to do so. It is my desire that the said payments and allowances aforesaid shall be used, as far as necessary, for their respective support and education, and if either of said grandchildren shall die before attaining the age of twenty-five years said payments and allowances shall cease as to such child at his death. None of such payments shall continue to any such grandchild after she or he attains the age of twenty-five years nor after the termination of this trust, as hereinbefore specified.

"(7) If the net income that shall be derived from my estate shall be insufficient to pay the full amount hereinbefore provided for my son and grandchild or grandchildren, then the same shall be abated *pro rata*.

"(8) Should there be a surplus of the net income of my trust estate after the payment of allowances and legacies hereinbefore provided for my son and grandchild or grandchildren, I desire my said trustee to invest the same in securities that will be readily convertible into cash, so that in case any part of my property shall be injured or destroyed, by fire or otherwise, or in case he shall desire to

improve any part thereof, he will be able to obtain the cash therefrom for the purpose of so doing, and thus avoid the necessity of making loans therefor and securing the same as hereinbefore provided.

"(9) Should any grandchild of mine attain the age of twenty-five years, I hereby authorize and direct my said trustee to pay over to such grandchild at that time the sum of twenty-five thousand dollars in cash or its equivalent in real or personal property, to have and to hold the same to him or to her as his or her absolute property forever.

"(10) If my son, John C. Outhet, shall die leaving a child or children born in lawful wedlock him surviving, when the youngest of such children then surviving shall attain the age of twenty-five years, if he does so prior to the termination of this trust first above provided, my said trustee is hereby authorized and directed to close this trust. He is also hereby authorized and directed to close this trust if the last surviving child shall die before attaining the age of twenty-five years and before the termination of this trust as first above provided. In the first case, to-wit, when the youngest of such children then surviving shall attain the age of twenty-five years, he is hereby authorized and empowered, in case my said son shall then have but one child him surviving, to convey and transfer to said child five-tenths part of said trust estate; in case he shall then have two children him surviving, the six-tenths part thereof; in case he shall then have three children him surviving, the seven-tenths part thereof; in case he shall then have four children him surviving, the eight-tenths part thereof; in case he shall then have five children him surviving, the nine-tenths part thereof; in case he shall then have six or more children him surviving, then the whole of the said estate. Should there be more than one child him surviving, each child then surviving shall share and share alike with each of the other children so surviving and to be benefited under the provisions of this trust. If all of said trust estate is

not disposed of as above, then what remains shall be disposed of under the twelfth paragraph of this trust. In the second case above provided for, should no one of such children live to be twenty-five years old and said trust shall not have terminated by lapse of time, as first hereinbefore pro-vided, then said property shall be disposed of under the twelfth paragraph of this trust.

"(11) If my said son, John C. Outhet, shall die and leave a widow surviving, then, within one year after the date thereof, my said trustee shall transfer and set over to her money to the amount of twenty-five thousand ($25,000) dollars or its equivalent, to be her absolute property forever.

"(12) In case there should be any part of my property left undisposed of under the foregoing provisions of this trust, I direct that as soon as may be after the termination thereof the same shall be converted into money or its equivalent and shall be distributed as follows, to-wit: Six and two-thirds per cent thereof to my cousin Bertha S. Morrell; six and two-thirds per cent to my cousin Fred H. Sherman; six and two-thirds per cent to Gertrude H. Foote, daughter of my cousin John B. Foote; six and two-thirds per cent thereof to my cousin James B. Wayman; six and two-thirds per cent thereof to my cousin William O. Wayman; six and two-thirds per cent thereof to my cousin John E. Wayman; six and two-thirds per cent thereof to my cousin Charles A. G. Wayman; six and two-thirds per cent thereof to my cousin Mary Jane Coleman; six and two-thirds per cent thereof to Ira M. Harries, the brother of my deceased wife; six and two-thirds per cent to Howard H. Harries, the brother of my deceased wife; sixteen and two-thirds per cent thereof to my cousin Ada Root, and sixteen and two-thirds per cent to my cousin George A. Follansbee. If either of my said devisees shall not be living at the time of my decease but shall have died leaving a child or children, then such child of such deceased devisee, or the survivors of them, shall receive such part of my said estate as

such deceased devisee would have received had he or she been living at that time, share and share alike; and if any one of said devisees shall die prior to that time, leaving no child or children, then his heirs-at-law shall receive such part of my estate as such deceased devisee would have received had he or she been living at that time, according to the rule of descent then in force in the State of Illinois. If, however, any one of my said devisees shall during his or her lifetime, either prior or subsequent to the time of my decease, leave a last will and testament, in which he or she shall designate in what manner such testator desires to dispose of any interest he or his heirs would otherwise have had hereunder in my estate, then the interest hereby intended to be devised, as hereinbefore directed, shall go to the person or persons so named in such testator's will, in the proportions therein designated."

Paragraph 13 relates to the appointment of a successor in case of the death of the said George A. Follansbee. Paragraph 14 is as follows:

"(14) I hereby direct that there shall be paid to my said trustee, or his successors in trust, a reasonable compensation for his or their services in connection with the duties to be performed hereunder, the amount to be fixed from time to time by any court having jurisdiction of such matters."

The remaining portions of the will and the codicil have no bearing on the questions at issue in this case. John C. Outhet died on the 7th of June, 1909, at the age of thirty-four, leaving him surviving a widow and one son, John C. Outhet, Jr., who was then not quite ten years of age. The provision of the will for the payment of an annuity to John C. Outhet was complied with until it was suspended by his death, and the payments to the grandson were continued up to the entry of the decree. A number of specific legacies provided for in the first four paragraphs of the will have been paid, and $25,000 has been paid to the widow

of John C. Outhet under paragraph 11 of the will. The power given to the trustee to convey property of the estate to John C. Outhet, in his discretion, was never exercised and no property was conveyed to him under said power. John C. Outhet having died before he reached the age of forty, he took no interest in the premises known as 116 and 118 Franklin street, Chicago, under paragraph 4 of the will.

Appellees and George A. Follansbee contend that upon the death of John C. Outhet, leaving only one child, they became entitled to five-tenths of the estate, subject to the monthly payments to said John C. Outhet, Jr., and subject also to the contingent legacy of $25,000 which John C. Outhet, Jr., will become entitled to if he lives to the age of twenty-five years; that by the death of John C. Outhet the rights of appellees and Follansbee to five-tenths of the estate became fixed, and the purposes of the trust as to such five-tenths having been accomplished, their right to the immediate distribution and enjoyment of their respective shares should be recognized by the trustee or otherwise secured to them by the decree of the court. On the other hand, the trustee and John C. Outhet, Jr., contend that it was the intention of the testator to keep his estate intact and continue the trust as to the whole of said estate until it was terminated by John C. Outhet, Jr., attaining the age of twenty-five years, or by his death should he die before that time. Appellants contend that even if the interest of appellees is a vested remainder under the will, the enjoyment thereof is postponed, under a proper construction of the will, until the trust is terminated in the manner above stated, and that such construction of the will does not bring it in conflict with any established rules of law.

A careful study of the will will disclose that the controlling concern of the testator was to make ample provision for his son and grandson and any other grandchildren that might thereafter be born. A brief reference to some of the clauses and paragraphs of the will in which provi-

sions are made for the son and grandchildren will show the interest and solicitude the testator had for his lineal descendants.

By the first clause of the will the son is given a scholarship in the Northwestern University and all of the household furniture, jewelry, personal adornments and wearing apparel, except the testator's watch and chain, and he is also given the sum of $25,000, to be paid to him in cash or its equivalent within ninety days after the testator's death. By the fifth clause the residue of the property is devised to the trustee, to hold during the lives of the son and the grandson, and the survivor of them, and twenty-one years thereafter, unless the trust is sooner terminated in accordance with the provisions of the will thereinafter made. After enumerating the powers that are given to the trustee in the second paragraph of the fifth clause, the mind of the testator again reverts to his son, John, and the trustee is there directed to pay him $250 a month out of the income of property other than Nos. 116 and 118 Franklin street, and the trustee is given discretion to pay to said son any further sum or sums, monthly, which the trustee may deem proper or necessary, thereby, in effect, placing the entire income of this large estate subject to be appropriated by the trustee to supply the needs of the son. The testator by the next paragraph authorizes and directs the trustee to convey absolutely the premises known as 116 and 118 Franklin street to the son when he attains the age of forty years, and in addition he is given the entire income of said premises, to be paid to him as often as once in three months. By the next paragraph the trustee is authorized to convey and transfer to the son any other and further property embraced in the trust as in the judgment of the trustee he shall deem best, reserving only a sufficient amount of property to yield a net income sufficient to meet the allowances made for the grandchildren by paragraph 6 of the will. Paragraph 6 provides for the payment, monthly, of $75 to

the grandson until he attains the age of sixteen years, and thereafter $100 per month until he attains the age of twenty-five years. By said paragraph it is also provided that if there shall be born any other grandchildren who shall survive the testator, the trustee is directed to pay a monthly allowance to each of said grandchildren, increasing the amount at stated periods until it reaches the sum of $100 per month. Paragraph 9 provides for the payment of $25,000 in cash to each grandchild upon such child arriving at the age of twenty-five years. By paragraph 10 it is provided that if the son of the testator shall die leaving a child or children, the trustee is directed to close the trust when the youngest of such grandchildren shall reach the age of twenty-five years, provided he does so prior to the termination of the trust; and it is provided in said paragraph that if the son should leave one child, upon his attaining the age of twenty-five the trustee is to convey and transfer to said child five-tenths of the trust estate; if two children are left, six-tenths shall be conveyed to them; if three children are left, seven-tenths, and so on, adding a tenth for each additional child until five are provided for, and then it is provided that if there are six or more children they shall have the whole estate, share and share alike. It is then provided that if all of the trust estate is not disposed of as above, the remainder shall be disposed of under the twelfth paragraph.

It will thus be seen that the primary and controlling purpose of the testator was to make ample provision for his lineal descendants, and to carry out this purpose he provided that in certain contingencies the entire trust estate might be appropriated under the will. If John C. Outhet had died leaving six children surviving him, they would have taken the entire trust estate if the provisions of the will were to be given effect according to the clear intention of the testator. The testator manifestly had two objects in view in creating the trust: He desired to provide for any

grandchildren that might be born after his death, and he wanted to postpone the distribution of his estate to such grandchildren until they should reach the discreet age of twenty-five years. Under the will the estates of appellees vested subject to be opened up to let in the interest of any grandchildren that might thereafter be born. There is nothing in the will that tends to show that the testator had any other purpose in creating the trust and postponing the distribution of his estate. There is no reason personal to appellees why the trust should be created or continued. As already stated, these beneficiaries were adults and *sui juris,* and the youngest one of them was forty-five years of age. Neither can it be maintained with any show of plausible reasoning that this was a trust for accumulation. That suggestion is answered by the several provisions of the will already adverted to, authorizing and directing the distribution not only of the income but also of the corpus of the estate itself, in the discretion of the trustee. Upon the death of the testator one-half of the estate vested, subject to the other legacies and charges made by the will, in appellees and George A. Follansbee individually. Distribution could not be made at that time under the will, since John C. Outhet was then alive and there was the possibility of his having other children who would share in the estate.

We are brought more readily to the conclusion that the estate vested upon the death of the testator, as above stated, subject to be opened up by the birth of other children, by a consideration of the provisions in paragraph 12 of the will for the interests of any of the devisees who might die either before or after the testator, to pass to their children, or their heirs in case no children were left, or to such persons as might be designated by the devisees in any last will and testament which such devisee might leave. Appellees and George A. Follansbee having a vested remainder in five-tenths of the estate, the enjoyment of which was postponed to let in the interests of any after-born grandchil-

dren, when that purpose of the postponement was effected
by the death of the testator's only son without leaving any
other children, the purposes of the trust, in so far as it
applies to this five-tenths interest, were fully accomplished.

When the purpose of a trust is accomplished and there
is no time specified for its termination, it will end with the
accomplishment of the purpose for which it was created.
(*Kohtz* v. *Eldred,* 208 Ill. 60; *Armstrong* v. *Barber,* 239
id. 389; *Sears* v. *Choate,* 146 Mass. 395; 15 N. E. Rep.
786; *Claflin* v. *Claflin,* 149 id. 22; 20 id. 454; *Sotcldo* v.
*Clement,* 11 Ohio Dec. 802; Schouler on Wills, sec. 610.)
In *Claflin* v. *Claflin, supra,* the Supreme Court of Massa-
chusetts said: "This court has ordered trust property con-
veyed by the trustee to the beneficiary when there was a dry
trust, or when the purposes of the trust had been accom-
plished, or when no good reason was shown why the trust
should continue and all the persons interested in it were
*sui juris* and desired that it be terminated." The same lan-
guage is found in Schouler on Wills, *supra.* In *Kohtz* v.
*Eldred, supra,* on page 72, this court said: "Where the
evident purpose of a trust is the accomplishment of a par-
ticular object the trust will terminate so soon as that ob-
ject has been accomplished, and the fact that a fee is given
to the trustee does not show the testator's intention that the
trust estate shall continue after the active duties connected
with the trust have been accomplished,"—citing Page on
Wills, sec. 618. In *Armstrong* v. *Barber, supra,* on page
403, it is said: "This court, in *Kohtz* v. *Eldred,* 208 Ill.
60, has stated that such a trust will terminate as soon as
the object for which it was established has been accom-
plished." In *Sears* v. *Choate, supra,* it is said: "There is
no doubt of the power and duty of the court to decree the
termination of the trust where all of its objects and pur-
poses have been accomplished, where the interests under it
have all vested and where all parties beneficially interested
desire its termination. Where property is given to certain

persons for their benefit and in such manner that no other person has or can have any interest in it, they are, in effect, the absolute owners of it, and it is reasonable and just that they should have the control and disposal of it unless some' good cause appears to the contrary,"—citing *Smith* v. *Herrington,* 4 Allen, 566; *Bowditch* v. *Andrew,* 8 id. 339; *In re Stone,* 138 Mass. 476; *Inches* v. *Hill,* 106 id. 575; *Underwood* v. *Bank,* 141 id. 305; 4 N. E. Rep. 822.

Appellants earnestly contend that the case at bar does not fall within the rule above announced. Since, as it is said, the will fixes a definite time when the trust is to be closed, if the court was asked to terminate this trust as to the interest of John C. Outhet, Jr., there would be no answer to appellants' position. It is perfectly plain that one of the purposes of the testator in creating the trust was to provide against the possible mismanagement of the shares of the grandchildren until they attained the age of twenty-five years. While the testator made suitable provision for his grandchildren until they attained the age of twenty-five years, still, for reasons which he deemed sufficient, he expressly provided that their shares should continue in the trust until they reached the required age. But the reasons that led to the fixing of this limitation in regard to the grandchildren have no application when considered in reference to the shares of the adult beneficiaries, who are as capable of managing their interests now as they ever will be.

But it is said that the will provides that the trustee shall, when the trust is terminated, convert the residue of the estate, if any, into money and distribute the same to the residuary legatees according to their respective interests. This argument is based on a mere implication from the language of the will. The will nowhere expressly directs the trustee to do anything in regard to such part of the estate as may pass to appellees under the twelfth paragraph of the will. The language of the will is: "In case there should be any part of my property left undisposed of under

the foregoing provisions of this trust, I direct that as soon as may be after the termination thereof the same shall be converted into money or its equivalent and shall be distributed as follows." The duty to convert the residue of the property into money and distribute the same is not enjoined on the trustee. The direction is simply that "the same shall be converted into money or its equivalent and distributed as follows," but by whom the conversion is to be effected the will is silent. If an argument is to be drawn from this language, it would be a fair inference that the testator contemplated that the conversion and distribution under the twelfth paragraph might be made in some other manner than by the action of the trustee. The entire will bears evidence of having been carefully drawn. The omission in paragraph 12 to direct that the trustee shall convert the residue into money and distribute the same is not without significance. In all other parts of the will where duties are enjoined upon the trustee the language is unambiguous.

But even if it be conceded that it is implied that the trustee shall convert the residue into money or its equivalent and distribute the same to appellees because the title to the property was placed in the trustee by the first paragraph of clause 5 of the will, that fact does not have any bearing upon the question when such conversion and distribution shall take place. As we have seen, upon the death of John C. Outhet there was a complete vesting in the appellees and Follansbee of one-half of this estate, subject only to the payment of the monthly allowances and the contingent legacy of $25,000. Their title being a vested remainder, has all of the elements incident to absolute ownership in fee. It cannot be doubted that they took such an equitable estate as might be alienated, and which, at least in equity, would be subject to the payment of their debts. (*Sparhawk* v. *Cloon*, 125 Mass. 263.) After the death of the son leaving but one child, nothing that could thereafter happen would diminish or defeat their title. No reason ex-

ists for the continuance of this trust as to the five-tenths interest of appellees and George A. Follansbee. No one, unless it is the trustee, will be benefited by withholding from appellees the enjoyment of their interests until the grandchild becomes twenty-five years of age.

But it is said by appellants that the trust should be continued as to the whole estate because it will be more beneficial to the minor, in that the estate can be handled more advantageously as a whole and made to yield a greater income than to have it divided at this time. The premises upon which this argument is based may be well questioned. At all events, it would be highly inequitable to wholly deprive appellees of all benefits from the use of their interests until most of them would probably be dead, in order to increase the possible income of the minor's share of the property.

Again, appellants insist that the trust property cannot be divided and the trust terminated as to one part and continued as to the other. There is no doubt of the power of a court of equity to order a trustee to pay or distribute to such beneficiaries as may be entitled thereto, their respective shares of the estate and continue the trust as to other beneficiaries who, by reason of minority or for other cause, are not entitled to their shares. This power has often been exercised by courts of chancery in proper cases. (*Inches' v. Hill, supra; Sears* v. *Choate, supra; Matthews* v. *Thompson,* 186 Mass. 14; *Welch* v. *Trustee,* 189 id. 108; *Northern Trust Co.* v. *Wheaton,* 249 Ill. 606.) In *Northern Trust Co.* v. *Wheaton, supra,* on page 616, this court said: "The foregoing authorities seem to settle the question now under consideration in favor of the acceleration of the remainder of the beneficiaries and to establish their right to the immediate enjoyment of the estate, except as to those, if any, who have not reached their majority. As to such, if any, the trust will be continued until they reach their majority."

Our conclusion upon this branch of the case is, that the court below erred in not granting appellees the full measure of relief to which they were entitled.

The monthly allowances for the benefit of John C. Outhet, Jr., are a charge upon the entire estate, as is also the contingent legacy of $25,000 payable to him when he arrives at the age of twenty-five. In order to properly take care of these charges the trustee should be required to set aside $30,000 and invest the same in some safe income-bearing securities and keep the same so invested until the minor reaches the age of twenty-five years, the income from such investment to be applied to the payment of the monthly allowances to the minor, and when he arrives at the age of twenty-five years he should be paid $25,000.

Counsel on both sides have discussed the application of the rule against perpetuities in its supposed application to the provisions of the will in regard to after-born grandchildren. In the view that we take of the case it is not necessary to consider that question. No one is claiming any interest by virtue of those provisions of the will which are supposed to offend the rule against perpetuities. Whatever view might be taken of those provisions, the will is valid in other respects, and the result is the same regardless of any view that might be taken of that question.

It follows from what has been said that the decree of the court below should be reversed on the cross-errors of appellees, which is accordingly done. The cause will be remanded to the circuit court of Cook county, with directions to that court to enter a decree in accordance with the views herein expressed, directing the trustee to close the trust as to five-tenths of the estate and for a partition among the appellees and George A. Follansbee individually, in accordance with the usual practices of the court in partition proceedings. *Reversed and remanded, with directions.*

CARTWRIGHT and DUNN, JJ., dissenting.