WILL OF HAMBURGER: FIRST WISCONSIN TRUST COM-PANY, Trustee, Appellant, vs. HAMBURGER and others, Respondents.

*November 14—December 9, 1924.*

*Wills: Merger of life estate and remainder: Construction of will as a whole: How intention of testator ascertained.*

1. Where a will gave the residue of testator's estate to executors in trust, to pay the income therefrom to the widow for life, and gave the principal, subject to such trust, to the widow to become her separate estate to be disposed of by her, and, if not disposed of, to become part of her intestate estate, the life estate and remainder did not merge, it being the intention of the testator to create a trust to continue during the life of the widow, whether the beneficiaries desired such continuance or not. p. 278.

2. Effect should be given to every word and clause in a will, if possible, so long as they are not inconsistent with the general intent of the will as a whole. p. 282.

3. The cardinal rule in the construction of wills is to find out the intention of the testator and give it effect, and to this rule all others are subordinate; and to ascertain such intention as expressed in the will the whole document must be construed together. p. 282.

APPEAL from an order of the county court of Milwaukee county: JOHN C. KAREL, Judge. *Reversed.*

This is an action involving the construction of a will. The county court of Milwaukee county made an order by which the trustees under the will of Nathan Hamburger, Sr., were directed to transfer to the petitioner, *Nathan Hamburger, Jr.,* 1,000 shares of the common stock of Gimbel Bros., Inc., out of about 23,000 shares held by them as such trustees, and to pay to *Nathan, Jr.,* the dividends, if any, from the 1,000 shares, since they had notice of an assignment of those shares to the petitioner by his mother, *Bertha Hamburger Behal,* formerly *Bertha Hamburger.* This order was made in a proceeding by *Nathan* seeking a construction of the will and a judgment directing the trustees to deliver to him the shares of stock which had been assigned to him by his mother. Two of the trustees approved the gift, but the appellant declined on the ground of lack of authority.

The testator, when a lad of thirteen, entered the employ of Adam Gimbel, who was the founder of the business which has for so many years borne the name of Gimbel Brothers. In 1883 he was admitted as a partner, and at the time of his death in 1910 was a vice-president and was in charge of the Milwaukee store. Five of the seven sons of Adam Gimbel are living and connected with the business, as are also nine of his grandsons. The grandsons are all vice-presidents and stockholders of the corporation. *Nathan, Jr.,* is the only son of the testator. He entered the employ of Gimbel Brothers, Inc., in January, 1923, and became twenty-one years of age in May of that year; holds an executive position in the Philadelphia store, and desires to have a substantial interest in the business. The corporation of Gimbel Brothers, Inc., took over the business originally conducted by the firm of Gimbel Brothers. The partnership agreement provided that the sons of the partners might be taken into the business when twenty-three years of age, if of good character and sound business ability, after serving five years of apprenticeship, or, if they had a college degree, three years of apprenticeship. *Nathan* did not have a college degree.

The will is a lengthy document consisting of nineteen articles. It was dated March 30, 1908, and there is also a codicil dated June 28, 1910, revoking two former codicils. The most important article, here involved, is number XVI, which is as follows:

"All the rest, residue, and remainder of my property and estate of whatever kind and nature and wherever situated, real, personal, and mixed, which I may own at the time of my death, I give, devise, and bequeath to my said executors, in trust, upon the trust that they hold and invest the same and pay the net income thereof to my beloved wife, *Bertha Hamburger,* for her own sole use and benefit so long as she may live, and subject only to this bequest in trust for and during the life of my said wife, the principal of this bequest is given, devised, and bequeathed to my wife to become her sole and separate estate, to be disposed of by her, by will or otherwise; and if she do not so dispose of it, to become upon her death part of her intestate estate; and the gift, devise, and bequest made to my said wife in this will are in lieu of dower and other claim against my estate which my wife might have in the absence of this will; and I will and direct that the gift, devise, and bequest made in this article of my will shall in any event include and carry no less than two thirds of the appraised value of my estate, and that the other gifts and bequests in this will made shall, if necessary, be proportionately reduced in order to make the amount given by this article of my will at least such two-thirds portion of my estate."

In the other paragraphs of the will there are numerous bequests providing for relations and charities, and there is careful provision for the appointment of executors and their successors in case of resignation or death. Other facts will be stated in the opinion.

For the appellant there were briefs by *Miller, Mack & Fairchild* of Milwaukee, and oral argument by *Edwin S. Mack.*

For the respondent *Hamburger* there were briefs by *Lines, Spooner & Quarles* of Milwaukee, and *Saul, Ewing,*

Will of Hamburger, 185 Wis. 270.

*Remick & Saul* of Philadelphia, and oral argument by *Louis Quarles, James Quarles,* and *Raymond M. Remick.*

JONES, J.   It is first contended by the plaintiff's counsel that by the terms of the will the life interest and the remainder are merged in the widow; that the language of the will clearly evidences a gift of the principal directly to her without the intervention of trustees; that she was given the title and all the rights incident to the title, including the right of disposition by will or in any other way she might choose.   Reliance is also placed on the clause, "and if she do not so dispose of it, to become upon her death part of *her* intestate estate."   It is further argued that, since the life estate and the remainder merged in the widow, the trust is terminable by her.

The Wisconsin case principally relied on for this claim is *Holmes v. Walter,* 118 Wis. 409, 95 N. W. 380.   There the language of the will was: "After the payment of my just debts and funeral expenses, I give, devise, and bequeath to my beloved wife Mary, in trust for herself and my children, all of my estates, both real and personal, with full power to continue my business if for the best interest of my estate."   All of the children were minors, with the exception of one, when the suit was brought.   It will be observed that, as compared with the will now before us, the language relied on to create the trust was rather vague and uncertain.   In the lower court it was held that the will created a mere passive or dry trust and that it must be considered as if there were no trust at all and that the property was given direct to the beneficiaries.   On appeal, in an opinion by Mr. Justice MARSHALL, it was held that the devise and bequest were not made absolutely to the trustee, the widow, but for herself and her children, and that all were to share equally in the benefits of the trust; that it was evident that the trust concerned more than the mere title and that the immediate use and possession were not intended to go to the benefici-

aries. It was held that the trust was not void as indefinite or uncertain; that it was not a dry or passive trust. The judgment of the lower court was reversed, and the trust was not terminated. In discussing the question whether the trust was void for uncertainty because no time was stated for its termination, it was said:

"Again, since the will contains no prohibition, express or implied, against terminating the trust, and all parties that can be interested are *in esse,* when all are *sui juris* they can by uniting cause its termination, subject to the restraints contained in secs. 2089 and 2091, Stats. 1898 (citing cases). The mere fact that the trust is in terms perpetual does not affect it. That feature is not objectionable so long as it does not offend against the prohibition against suspending the absolute power of alienation. 1 Perry, Trusts, § 23."

This language is much relied on by counsel for the respondents. It will be observed that this quotation has the qualification "since the will contains no prohibition, express or implied, against terminating the trust." This is a condition often referred to in cases cited by the respondents, and attention is called to it in a later opinion by Mr. Justice MARSHALL. *Will of Rice,* 150 Wis. 401, 453, 136 N. W. 956, 137 N. W. 778. Counsel also rely on authorities from other jurisdictions and especially on decisions of the supreme judicial court of Massachusetts, and the following cases are cited: *Bowditch v. Andrew,* 8 Allen (Mass.) 339; *Inches v. Hill,* 106 Mass. 575; *Whall v. Converse,* 146 Mass. 345, 15 N. E. 660; *Sears v. Choate,* 146 Mass. 395, 15 N. E. 786; *Langley v. Conlan,* 212 Mass. 135, 98 N. E. 1064; *Eakle v. Ingram,* 142 Cal. 15, 75 Pac. 566; *Tilton v. Davidson,* 98 Me. 55, 56 Atl. 215; *Armistead's Ex'rs v. Hartt,* 97 Va. 316, 33 S. E. 616. In these cases, for various reasons, the courts held that the trusts might be terminated, and in *Sears v. Choate, supra,* a case often cited, the rule in Massachusetts was thus stated:

"There is no doubt of the power and duty of the court to decree the termination of a trust, where all its objects and

purposes have been accomplished, where the interests under it have all vested, and where all parties beneficially interested desire its termination. Where property is given to certain persons for their benefit, and in such a manner that no other person has or can have any interest in it, they are in effect the absolute owners of it, and it is reasonable and just that they should have the control and disposal of it unless some good cause appears to the contrary."

It seems hardly necessary to review in detail the cases. An examination of them will show that one or more of the following considerations led the court to terminate the trust: All the interests had become vested in the beneficiary or beneficiaries, and no third person could be interested; or all the purposes of the trust had been accomplished; or there was no express or implied prohibition of the termination; or it was a mere dry trust and all the beneficiaries desired its termination; or such events had transpired after the execution of the will as had not been and could not have been anticipated by the testator, which rendered the continuance of the trust unnecessary.

In *Claflin v. Claflin*, 149 Mass. 19, 20 N. E. 454, a testator by his will, after liberal provisions for a son, gave one third of the residue of his personal estate to trustees in trust "to sell and dispose of the same and to pay the proceeds thereof to my son in the manner following, viz.: $10,000 when he is of the age of twenty-one years, $10,000 when he is of the age of twenty-five years, and the balance when he is of the age of thirty years." The trustees paid over $10,000 to the son when he became twenty-one years of age, and thereupon he filed a bill in equity to obtain the rest of the fund. In the opinion the court reviewed the case of *Sears v. Choate, supra,* and other cases, and in the opinion it was said:

"We have found no expression of any opinion in our Reports that provisions requiring a trustee to hold and manage the trust property until the beneficiary reached an age beyond that of twenty-one years are necessarily void if the interest of the beneficiary is vested and absolute (citing cases). This

is not a dry trust, and the purposes of the trust have not been accomplished if the intention of the testator is to be carried out. . . . In the case at bar nothing has happened which the testator did not anticipate, and for which he has not made provision. It is plainly his will that neither the income nor any part of the principal should now be paid to the plaintiff. . . . The existing situation is one which the testator manifestly had in mind and made provision for; the strict execution of the trust has not become impossible; the restriction upon the plaintiff's possession and control is, we think, one that the testator had a right to make; other provisions for the plaintiff are contained in the will, apparently sufficient for his support, and we see no good reason why the intention of the testator should not be carried out."

The decision in this case was followed in *Young v. Snow*, 167 Mass. 287, 45 N. E. 686, where under the will the trust fund was to remain in the hands of trustees for twenty years from the testator's death and provision was made for the use of the income during that period. The court said:

"None of these provisions are repugnant to law or contrary to public policy. The testator, therefore, had the right to make the disposition of his property which he did make, and it is the duty of the court, so far as it has jurisdiction, to carry out the trust. Although the interests created under the trust have all vested, and all the parties interested request that the trust be terminated and the trustee consents, the objects and purposes of the trust have not been accomplished, nor has their accomplishment been made impossible. . . . While the will vests the fund in the testator's four children, it does not give them an absolute estate, and then impose restrictions and conditions repugnant to the estate, but gives an ownership qualified by the directions that the property is to remain for a time in the hands and control of the executors as trustees. Whether the testator made these provisions for one purpose or another is immaterial, since he had the right to order as he did. Under our decisions, such provisions are not void, and are to be carried out."

In *Hoffman v. New England T. Co.* 187 Mass. 205, 72 N. E. 952, the court said:

"But there are other grounds for refusing the petition. Plainly the testator intended that the trust should continue until the death of both of his nieces Mary and Laura. And whatever may be the law elsewhere, that provision in this commonwealth is legal. *Claflin v. Claflin,* 149 Mass. 19, 20 N. E. 454. It is also plain that nothing has happened which the testator did not anticipate, and for which he has not made provision. The language used by FIELD, J., in the case above cited is applicable here: 'It cannot be said that these restrictions upon the plaintiff's possession and control of the property are altogether useless, for there is not the same danger that he will spend the property while it is in the hands of the trustees as there would be if it were in his own.' " See, also, *McCoy v. Natick,* 237 Mass. 99, 129 N. E. 381 ; *Forbes v. Snow,* 245 Mass. 85, 140 N. E. 418.

In former decisions of this court it has been uniformly held that it is the duty of the courts in cases of this kind to uphold the intentions of the testator despite the wishes of the beneficiaries. In *Bussell v. Wright,* 133 Wis. 445, 113 N. W. 644, the court said, though the beneficiaries were willing to terminate the trust:

"The paramount question is, What was the intention of the testator respecting the execution of the trust as gathered from an inspection of the will? If it appears from the will that the intention of the testator was that the trustee should execute the trust founded, courts have no power to frustrate that intention and devise a different method of execution. This would be to substitute the judgment of the court for the judgment of the testator in the distribution of his bounty. The rule that the intention of the testator must govern has been often laid down by this court and other courts, and further discussion of it would seem unnecessary."

In closing the opinion the court said:

"To order a termination of the trust in the case before us,

or make other provisions for the execution of it than those clearly defined on the face of the instrument creating the trust, would be a clear disregard of the intention of the testator."

We might quote, if it were necessary, at great length from the opinion in the well known case of *Will of Rice,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778, where the beneficiaries asked the court to approve an agreement between them by which a trust was to be terminated and other disposition of the property of the testator, than that designated in the will, provided for. It was held that the court was powerless to carry out a plan devised by beneficiaries under the will by which their scheme could be substituted for that of the testator. In this opinion there is an elaborate discussion of the inviolability of the testamentary trust, the sacredness of the right to make a will, and the duty of the courts to uphold that right. *Will of Dardis,* 135 Wis. 457, 115 N. W. 332, is another case in which this court rejected a stipulation by the beneficiaries by which a distribution of the estate different from that prescribed in the will was proposed, and it was said the testator's "right is recognized to direct at least the method of management and disposal of his property after his decease, which courts cannot be compelled to disregard to accommodate the wishes of some or even all parties having pecuniary interest in the property." See, also, *Guardianship of Reeve,* 176 Wis. 579, 186 N. W. 736; *Estate of Staab,* 166 Wis. 587, 166 N. W. 326.

We cannot agree with counsel for the plaintiff that the equitable and legal estates created by the will merged in the widow and that she became the absolute owner. It was the manifest intention of the testator to create a trust, giving the control and management of the residue to trustees during the life of the widow. Although she was given a legal estate in the remainder, by the plain language of the will, that estate was subject to the trust. The will was evidently

drawn by able counsel, and, since the bequest of the principal was made subject to the trust, those words cannot be read out of the will. In determining whether the absolute estate passed to the widow we cannot disregard the intent of the testator. He had accumulated by his personal effort a very considerable fortune. It seems clear to us that in disposing of it by will his paramount object was to make certain that during her life his widow should have every comfort suitable to her rank in life. Next to this purpose was the desire to make suitable provision for his only son, *Nathan,* then a small boy. He had doubtless observed enough of the vicissitudes of life to realize that it often happens that fortunes accumulated by the industry and economy of a lifetime may be lost, in the hands of persons inexperienced in business affairs, in a twelvemonth. He therefore made very careful and elaborate provision for such care and preservation of his estate during the life of his widow as to guard against such possibilities. The widow was not appointed to act as trustee alone, but two other trustees in whom he had confidence were named. It is a matter of common knowledge, as the testator doubtless appreciated, that the possession of large wealth when a boy reaches his majority is sometimes a misfortune rather than a blessing. Realizing this, in article VII of the will he bequeathed to his trustees, in trust, stock of the par value of $75,000, afterwards by codicil made $100,000, for the benefit of *Nathan,* but provided that the net income thereof should be paid to the widow to be used for his care and support until he was twenty-four years of age. In this article it was further provided that one third of the principal might be paid over to the son at that time if he desired to go into business, but this was left wholly in the discretion of two or all of the trustees to determine whether it would be safe to do so, and this discretion as to the final payment was to continue until he was thirty-five years of age. This article VII, containing very careful pro-

visions for the benefit of *Nathan,* covers nearly three pages of the printed case, and includes the following clause:

"And I purposely make no further provision for my son during the life of my wife until my son reaches the age of twenty-four years, knowing that my wife, so long as she lives, will, out of provision made for her in this will, provide for my son should anything be required in addition to the income in this article provided."

It is argued by counsel for the respondents that this paragraph shows an intention that the widow should not be precluded from aiding her son by the use of some of the large capital in the residue of the estate. But article VII was in the nature of a provision, made by the testator himself, for *Nathan's* going into business at the age of twenty-four, subject to the very careful restrictions imposed. The widow had $100,000, received from life insurance, and the very liberal income from the trust fund. If any inference is to be drawn from article VII it would seem to us rather unfavorable than favorable to the theory that the widow had any right under the will to assign to *Nathan* the stock in question. As bearing on the intent of the testator, it is of some significance that in the codicil it is provided that if any deficiency arose in the income for paying certain annuities specified in the will for his mother and brother, the deficiency should be made good out of the residue of the estate, by the trustees. The testator meant not only that the trustees should discharge their duties toward the widow and *Nathan,* but that they must continue in the management of the estate and hold the residue in order that they might meet possible obligations to others. In article XVIII it was directed that none of the stock be sold before 1910, and that if afterwards any was sold the first opportunity to buy be given to those who had composed the firm of Gimbel Brothers prior to the formation of the corporation, and that after 1910 the trustees were directed, in their judgment, to hold or sell the stock. Here was another indication of the in-

tention that the trust should not be terminated at the will of the beneficiaries. On the contrary, that it should continue until the objects of the will should be accomplished, and among the objects in his mind there seemed to be the discharge of a moral duty he owed to his former partners.

Great stress is placed by the respondents' counsel on the following clause in article XVI:

"The principal of this bequest is given, devised, and bequeathed to my wife to become her sole and separate estate to be disposed of by her, by will or otherwise; and if she do not so dispose of it, to become upon her death part of her intestate estate."

It is claimed that this gave to the widow the absolute power of disposal of both income and remainder at any time by will or otherwise. This language must be construed in connection with what precedes it, in which the residue is given to trustees upon the trust that they hold and invest the same and pay the net income to the widow so long as she may live, and the clause quoted above is expressly made subject to this trust.

The language relied on was broad enough to permit the disposal of the remainder by will or assignment or otherwise to take effect on her death. It is argued by the appellant's counsel, with some reason, that the words "by will or otherwise" related to the form of the disposal; that these words do not describe the thing which may be conveyed but the manner of conveyance; that the thing to be conveyed was the remainder, but subject to the trust. Counsel for the respondents follow their theory to its logical conclusion and argue that the widow could at any time after her husband's death have disposed of the entire residue of the estate. This means that she could have turned it over to her son or to a second husband; that in order to obtain an expected higher income she could have invested it in speculative stocks or securities and thus frustrated the plan cherished by her husband for her security. We cannot agree that the will ad-

mits of any such construction.   It is true that effect should be given to every word and clause, if possible, so long as they are not inconsistent with the general intent of the will as a whole.   The cardinal rule is to find out the intention of the testator and give it effect, and to this rule all others are subordinate.   To ascertain the intention expressed in the will the whole document must be construed together.   Our view as to the intention of the testator, in this case, has been already sufficiently stated.

We hold that the legal and equitable estates have not merged; that it was the testator's intention, as expressed in the will, to create a trust to continue during the life of his widow, whether the beneficiaries desired such continuance or not; and that such intention controls.   It follows that the will does not authorize the termination of the trust at this time, since the plan and the purpose contemplated by it have not been fulfilled or completed; and that, construing the will as a whole, it contains an implied prohibition against the termination of the trust until such objects are accomplished.

*By the Court.*—Order reversed.   The cause is remanded to the county court for further proceedings in accordance with this opinion.