William Connery, Appellant, v. Morris Van Thournout, Appellee.

Gen. No. 9,486.

October term, 1939.  Heard in this court at the Opinion filed January 25, 1940.

ARTHUR L. PAULSON, of Elgin, for appellant.

OSCAR B. McGLASSON and HARRY C. KINNE, both of Chicago, for appellee; HAROLD F. SCOVEL, of Chicago, of counsel.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

On and prior to September 8, 1933 George E. Price was the owner of the real estate involved in this proceeding. On that day he and Lawrence K. Pillsbury entered into an agreement by the provisions of which Pillsbury took title to this and other property of Price as trustee and was given power to manage the same, collect the rents and pay the net income quarterly or when requested by the donor to the donor during his lifetime. The trust agreement further provided that

the trustee should not lease the property except with the consent of the donor. Under the sixth clause of this trust agreement, certain real estate near Elgin and known as the Glenora farm was to be divided by the trustee and the homestead including a 30 acre tract was to be retained by the trustee and transmitted as a part of the residuary estate of the donor. By this same clause Marvin McNeil was given the privilege to purchase the balance of said farm within one year after the death of the donor. The ninth clause provided that after the donor's death, the trustee should distribute all the donor's household chattels and furnishings among the residuary beneficiaries of donor's estate according to the trustee's best judgment and discretion and the tenth clause of the same instrument provided that after the death of the donor, all the rest, residue and remainder of his property "shall be divided equally, share and share alike between the following named persons: Mrs. Mary Price Gaston, Cornelius Price and James M. Price, children of James S. Price and Florence C. Price, said Lawrence K. Pillsbury and said Josephine Quinn." By supplemental agreements the donor revoked any benefit under the trust agreement as to Josephine Quinn and canceled the privilege granted Marvin McNeil of purchasing a portion of the Glenora farm.

By virtue of the provisions of this instrument Pillsbury leased the premises to John H. Ball, whose lease expired March 1, 1939. On April 18, 1938 George E. Price died leaving Cornelius C. Price, James M. Price and Mary P. Gaston his heirs and on November 15, 1938 these parties leased the Glenora farm to Morris Van Thournout. On January 30, 1939 Pillsbury leased the same premises from March 1, 1939 for three years to William Connery for a rental of $70 per month. Ball vacated the premises and on February 27, 1939, Van Thournout went into possession under the lease of November 15, 1938. Thereafter on March 1, 1939

Connery instituted this proceeding under the Forcible Entry and Detainer Act before a justice of the peace to recover possession of the leased premises. Upon appeal to the circuit court a trial was had before the court without a jury, resulting in a judgment for the defendant and against the plaintiff for costs and from that judgment the plaintiff appeals.

Appellant contends that the trust instrument executed by Price conveyed the property in question to Pillsbury as trustee, granted him power to collect the rents and that he was to divide the property equally after the death of Price among those designated in the instrument; that after the death of Price and before distribution was made, Pillsbury, as trustee, had the implied power to lease the premises, that he did lease them to appellant and that appellant is therefore entitled to judgment therefor. Appellee contends that under the trust instrument Pillsbury, as trustee, had no power to lease the premises during the donor's lifetime without his consent; that upon the donor's death the trust terminated and the trustee had no power to lease and the legal and equitable title became immediately vested in the residuary donees as cotenants under the statute of uses.

Appellant argues that the estate which Pillsbury as trustee took under this agreement is commensurate with the powers conferred by the trust and the purposes to be effected by it and that he took whatever estate in the premises involved herein as was necessary to enable him to accomplish the purposes of the trust; that the trust was an active one and required him to lease the premises, collect the rents pending a division of the property among the various beneficiaries after Price's death; that under the trust agreement the fee to the farm was vested in him and nothing short of a reconveyance by him could place the title, after Price's death, in the beneficiaries. In support of this argument, counsel cite *Kirkland v. Cox,* 94 Ill. 400; *McFall*

*v. Kirkpatrick,* 236 Ill. 281 and *Coryell v. Klehm,* 157 Ill. 462. What these cases hold is that where the legal title is vested in a trustee under an active trust it requires a reconveyance to place the title back in the grantor, his heirs or assigns. In the *Kirkland* case, *supra,* the will creating the trust expressly directed the trustee to sell the land and divide the proceeds and the court held that under the provisions thereof the legal title would remain in the trustee until he sold and divided the proceeds as directed in the will. In the instant case no such words are found. In all the cases relied upon by appellant the question whether a trust once active could become passive and execute itself under the statute of uses was not passed upon. Here the trust agreement did not give the trustee any power to sell, nor did it direct him to sell and divide the proceeds of such sale. By the provisions of clause 10 the residuary estate of which the premises here involved is a part are to be divided equally, share and share alike between the residuary donees. Who is to make this division does not appear, presumably, however, the trustee. If so, he should have conveyed to each beneficiary his or her undivided interest therein by deed. Under the authorities, however, this would have been a useless act. In *Moll v. Gardner,* 214 Ill. 248 it appeared that the premises were devised to appellant in trust to collect the rents, make repairs and keep the estate intact until Charles F. G. Kann arrived at the age of 25 years and then appellant was to divide the estate in four equal parts. In its opinion the court said: "By this language an active trust was created, to continue until Charles F. G. Kann arrived at the age of twenty-five years, when the active duties of the trustee were to terminate and the estate was to be divided. . . . A trust which is active may become passive after all of the active duties have been performed, and the trust may become executed by the Statute of Uses and the title vested in the remainder-men. . . .

"Upon the arrival of Charles F. G. Kann at the age of twenty-five the active trust became executed and nothing remained but for the trustee to divide the estate. Physical division being impossible, the trustee might have completed her duties by conveying to each beneficiary an undivided one-fourth of the premises by deed. Each beneficiary was of age, and they might have partitioned the estate among themselves without the intervention of a court of equity and without the costs incident thereto; or, upon the termination of the active duties of the trust, the Statute of Uses would execute the remaining provisions of the will and the title to the property would vest immediately in the beneficiaries without deed or the decree of any court." See also *Cary v. Slead,* 220 Ill. 508; *Wayman v. Follansbee,* 253 Ill. 602; *Fox v. Fox,* 250 Ill. 384 and *Witham v. Brooner,* 63 Ill. 344.

The fourth clause of the trust instrument involved herein is: "For and during the life of the donor, the trustee shall make investment of any funds of said trust estate only as directed by the donor, and the trustee shall not sell, lease or otherwise dispose of any trust property in his hands save and except with the consent of the donor." The facts are that the donor died on April 18, 1938. The lease under which appellant claims was executed by the trustee on January 30, 1939. There is no evidence that Price consented thereto. The only other provisions in the trust agreement material to the question here presented are found in the tenth clause hereinbefore referred to. Neither by this clause nor by any other provision of the trust agreement did the donor grant to the trustee any power either express or implied, to burden this farm with either a long or a short-term lease. There is no basis in the instrument to support the contention that the trustee could lease these premises after the donor's death. He attempted to do so and leased them to appellant for three years, but in so doing exceeded the

powers conferred upon him by the instrument under which he assumed to act.

Whether, under the provisions of this trust agreement the legal title of the trustee, upon the death of the donor, merged in the equitable title of the residuary donees and they became vested with both the legal and equitable title or whether an actual conveyance from the trustee to the several residuary donees was necessary in order to invest them with the legal title, it is not necessary for us to determine. Appellee was in the actual, peaceable possession of the premises in dispute at the time this suit was instituted. In order to maintain this action, appellant must establish by a preponderance of the evidence a right of possession in himself. He cannot rely upon the lack of the right of possession in appellee, whom he seeks to dispossess. *Fitzgerald v. Quinn,* 165 Ill. 354. The lease under which appellant claims was executed by Pillsbury as trustee. It was not made by Pillsbury as one of the residuary donees. Appellee went into possession under the lease made by the residuary donees other than Pillsbury and it is immaterial by what right appellee claims possession of the premises until appellant establishes a superior right to possession thereof.

It was stipulated upon the hearing of this case that there was then pending in the circuit court of Cook county a proceeding in which Pillsbury was a party defendant, having for its purpose the canceling of this trust agreement and from an accounting and an injunction and that a preliminary injunction had issued restraining Pillsbury from conveying the premises here involved except upon an order of that court and there is no proof that the court authorized the execution of the lease by Pillsbury to appellant.

In our opinion the judgment appealed from is sustained by the competent evidence found in this record and will be affirmed.

*Judgment affirmed.*